550 S.E.2d 473 (2001)
250 Ga. App. 96
In the Interest of T.F., A Child.
No. A01A1421.
Court of Appeals of Georgia.
June 13, 2001.
Walter E. Baker, Hawkinsville, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., Harrison & Wall, Sarah E. Wall, Eastman, for appellee.
PHIPPS, Judge.
Appellant, the mother of a five-year-old girl, appeals an order of the Juvenile Court of Pulaski County terminating her parental rights. She challenges the sufficiency of the evidence to support certain of the court's findings and the court's refusal to place the child with other family members. Because the evidence is sufficient to support the *474 court's termination of her parental rights, and no abuse of discretion appears in the court's placement of the child, we affirm.
The evidence introduced at the termination hearing showed that T.F. was born on February 24, 1996. She lived with her parents until the Pulaski County Department of Family & Children Services (DFACS) took her into protective custody on September 11, 1997, as a result of her father's physical abuse of her mother, illegal drug use by both parents in T.F.'s presence, and inadequate child supervision. T.F.'s mother was placed in a shelter where she was to receive counseling for domestic violence and treatment for drug abuse but was discharged in short order for violation of rules. As a result, T.F. was placed in foster care with her maternal uncle and his wife approximately one week after being taken into protective custody.
T.F.'s mother has been convicted of forgery in the first degree, theft by conversion, possession of marijuana, and making a false statement against a law enforcement officer. She was imprisoned on October 3, 1997, several weeks after T.F. was taken into protective custody. Although she was released on parole in July 1998, she was arrested for possession of cocaine about three weeks later, her parole was revoked, and she was returned to prison. She has since been transferred to a transitional center. She is eligible for parole in June 2002, but cannot be reunited with T.F. until she participates in a work release program for eight months. Due in large part to her continued incarceration, she has failed to comply with reunification case plans requiring her to submit to alcohol and drug assessments and to enter inpatient drug treatment programs. She testified that in prison, however, she has taken part in substance abuse and parenting classes and that she has undergone and passed drug tests administered to her within 18 months of the termination hearing. At the hearing, the mother insisted that she is a changed person and made a heartfelt plea to keep her child because she has had a hysterectomy and cannot have any more children.
T.F.'s father voluntarily surrendered his parental rights. The guardian ad litem recommended that the mother's parental rights be terminated because of her history of drug abuse, her incarceration during most of T.F.'s life, and the uncertain prospects for her reunification with T.F. The juvenile court terminated the mother's parental rights after finding that T.F. is deprived, that lack of proper parental care or control is the cause of the deprivation, and that such cause of deprivation is likely to continue and will cause or is likely to cause serious harm to her. The court also found that there is a high probability that serious harm will occur to T.F. if she is returned to the care of her mother.
Family members with whom the child might have been placed included her maternal uncle and his wife, her maternal grandfather, and her maternal aunt and her husband. The evidence, however, showed that although the grandfather loves T.F. and regularly visits her, he is 75 years old, lives alone, and has numerous health problems that render him unable to take care of her. After conducting a home evaluation, DFACS recommended that T.F. not be placed with him. The maternal aunt and her husband are not regularly employed, rely on public assistance payments, already have three small children, and have criminal backgrounds as well as a history of domestic violence requiring law enforcement intervention. As a result, two home evaluations resulted in recommendations that T.F. not be placed with them. Although T.F. received good care while in the custody of her maternal uncle and his wife, he took the child to live with another relative in April 1999 because he decided that he does not want to adopt her. The juvenile court found that there is no suitable family member with whom T.F. can be placed and ordered that she be committed to the custody of DFACS for the purpose of placing her for adoption.
1. Appellant challenges the sufficiency of the evidence to support findings that she is presently unfit and that serious harm will occur to T.F. if she is returned to her care.
OCGA § 15-11-94(a) provides the two-step procedure for the termination of *475 parental rights.[1] The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[2] If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[3] In determining whether the child is without proper parental care and control, the court shall consider whether the parent has a history of excessive use or chronic unrehabilitated abuse of intoxicating liquors, narcotic or dangerous drugs, or controlled substances and whether the parent has a conviction of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship.[4]
The appropriate standard of appellate review in a case where a parent's rights to his child have been severed is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. The factfinding and weighing of evidence [are] to be done in the trial court under the clear and convincing test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met.[5]
"Evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required."[6]
(a) Appellant bases her argument that she is not presently unfit on the fact that she has been drug-free for the past 18 months and has attended all substance abuse and parenting classes that the prison has offered. Although appellant is to be commended for these actions, she has not proved her ability to remain sober and care for her child in an uncontrolled environment. She was given one opportunity to do so when admitted into the domestic violence shelter. She failed. She was given another opportunity when paroled from prison. Again, she failed. As a result, she has been incarcerated during most of T.F.'s life, and her incarceration continues with no firm parole date having been set. Although appellant testified about her participation in substance abuse and parenting programs, she presented no testimony from any of her counselors assessing her performance in these programs.[7] Under these circumstances, the court was authorized to determine, based on a consideration of appellant's past conduct, that the conditions giving rise to T.F.'s deprivation are likely to continue and that discontinuation of reunification efforts and termination of the mother's parental rights are in the child's best interest.[8]
(b) The juvenile court's finding of a high probability of serious harm to T.F. if she is returned to her mother was unnecessary to the court's decision and need not be reviewed.
*476 2. We find no merit in appellant's challenge to the juvenile court's determination that there is no suitable family member with whom T.F. can be placed. Under the evidence presented, the court did not abuse its discretion in making this decision.[9]
Judgment affirmed.
SMITH, P.J., and BARNES, J., concur.
NOTES
[1] In the Interest of D.S., 247 Ga.App. 569, 572, 545 S.E.2d 1 (2001).
[2] OCGA § 15-11-94(a), (b)(4)(A)(i)-(iv).
[3] OCGA § 15-11-94(a); In the Interest of D.B., 242 Ga.App. 763, 764, 531 S.E.2d 172 (2000).
[4] OCGA § 15-11-94(b)(4)(B)(ii), (iii).
[5] (Citations and punctuation omitted.) In the Interest of M.M., 207 Ga.App. 722, 725(1), 429 S.E.2d 132 (1993).
[6] (Citations and punctuation omitted.) In the Interest of R.A., 226 Ga.App. 18, 20, 486 S.E.2d 363 (1997).
[7] Compare In the Interest of K.M., 240 Ga.App. 677, 679, 523 S.E.2d 640 (1999).
[8] See In the Interest of C.N.S., 248 Ga.App. 84, 545 S.E.2d 633 (2001); see generally In the Interest of S.C.M.H., 238 Ga.App. 159, 162(2), 517 S.E.2d 598 (1999); compare In the Interest of K.M., supra; In the Interest of D.C.N.K., 232 Ga.App. 85, 501 S.E.2d 268 (1998).
[9] In the Interest of A.M.N., 234 Ga.App. 365, 371(2), 506 S.E.2d 693 (1998).