A04A1857. IN THE INTEREST OF R. H. L., a child.
(611 SE2d 700)

BARNES, Judge.

Claiming insufficient evidence, R. H. L.'s mother appeals the termination of her parental rights to her child. Because the trial court was authorized to find that there was clear and convincing evidence in favor of termination, we affirm.

In reviewing a biological parent's challenge to the sufficiency of the evidence, we determine whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *In the Interest of A. C.*, 230 Ga. App. 395, 396 (1) (496 SE2d 752) (1998). We do not weigh the evidence or determine witness credibility but defer to the juvenile court's fact finding. *In the Interest of L. H.*, 236 Ga. App. 132, 133 (1) (511 SE2d 253) (1999).

Viewed in accordance with that standard, the evidence shows that R. H. L. came into contact with the Dougherty County Department of Family and Children Services (DFACS) in 1999 after DFACS received reports that R. H. L., who was eight years old at the time, had never attended school. The child was also not in a registered home-schooling program. Although DFACS attempted to aid the mother in registering for school or setting up a home-schooling program, the mother would not cooperate. The mother also refused to have her child immunized and was concerned about her child attending school with a skin disorder. Following several attempts to work with the mother, DFACS filed a deprivation petition, which after a hearing, was granted and DFACS was awarded temporary custody of the child on July 29, 1999. The mother did not attend the hearing. A reunification case plan developed by DFACS and adopted by the juvenile court required the mother to, among other things, obtain permanent

housing, support R. H. L. financially, maintain contact with her son, and obtain a psychological evaluation.

In November 1999, the trial court conducted a review hearing at which it found that the mother failed to meet the requirement of her reunification plan. The mother did not obtain a psychological evaluation, had not obtained a permanent residence, did not file the forms required for home schooling, and would not agree to allow R. H. L. to attend school. The juvenile court continued custody with DFACS. The mother subsequently obtained a psychological evaluation which indicated that she had "the basic parenting knowledge, the literacy, and the intelligence to be an adequate parent." It found no evidence of a treatable mental disorder. DFACS's custody of R. H. L. was terminated in July 2000, and he was returned to his mother who was directed to "cooperate with aftercare services" and send the child to "school daily, unless there is a written medical excuse from the child's physician."

In September 2000, DFACS filed a second deprivation petition asserting that the mother had failed to comply with the juvenile court's order. Following a hearing on November 20, 2000, the juvenile court again determined that R. H. L. was deprived after finding that the mother had withdrawn the child from school, had not registered for home-schooling, and the child had missed 45 days of school. It was noted that R. H. L. tested at the pre-kindergarten level, and would fall asleep in class and urinate and defecate in his clothing at school. The mother testified that the child did not attend school because of his eczema, and was unable to attend school because of his medication. DFACS was again given temporary custody of R. H. L. and another reunification case plan was developed. The requirements were primarily those of the earlier plan and the mother was also required to participate in counseling with her son. She was subsequently ordered by the juvenile court to undergo another psychological evaluation and to receive individual counseling, which she did not do. Because of her failure to comply, DFACS's temporary custody of R. H. L. was extended by court order on November 6, 2001. In February 2002, the mother received another psychological evaluation which indicated that she "appear[ed] to be experiencing some degree of psychiatric/ psychological difficulty, which should be more thoroughly addressed in therapy prior to her regaining custody." The doctor diagnosed the mother with a personality disorder. On June 19, 2002, R. H. L. was again returned to the mother, and the juvenile court once more stipulated that R. H. L. must attend school.

A review hearing was held on November 25, 2002, at which the juvenile court was notified that R. H. L. was not attending school and was being emotionally abused by the mother. The court entered an order placing the child in emergency foster care. A deprivation

petition was filed, and on January 6, 2003, R. H. L. was found deprived and was once again placed in temporary custody of DFACS. The juvenile court entered a non-reunification order, and DFACS subsequently filed a non-reunification case plan, and, thereafter, filed a petition to terminate the mother's parental rights. The hearing to terminate the mother's parental rights was held on November 18, 2003. The father signed away his parental rights the day of the hearing. By order entered March 15, 2004, the juvenile court terminated the parental rights of R. H. L.'s mother. This notice of appeal followed.

In order to terminate parental rights, a juvenile court must determine (1) that there is present clear and convincing evidence of parental misconduct or inability; and (2) that termination of parental rights is in the best interest of the child, considering the physical, mental, emotional, and moral condition and needs of the child. OCGA § 15-11-94 (a). A determination of parental misconduct or inability requires findings that (1) the child is deprived; (2) the deprivation is caused by lack of proper parental care or control; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation will likely cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). *In the Interest of C. N. S.*, 248 Ga. App. 84, 85 (545 SE2d 633) (2001).

Further, "[e]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of *present* unfitness is required." (Citations and punctuation omitted; emphasis in original.) *In the Interest of R. A.*, 226 Ga. App. 18, 20 (486 SE2d 363) (1997); see also *In the Interest of D. C. N. K.*, 232 Ga. App. 85, 90 (501 SE2d 268) (1998). If these four factors exist, then the court must take the second step and determine whether terminating parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-94 (a).

The mother only argues on appeal that the juvenile court erred in terminating her parental rights because there was no clear and compelling evidence of present unfitness. She maintains that the juvenile court relied on old history which was more than a year old.

First, because the deprivation order was not appealed, the mother was bound by the deprivation finding for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

Next,

> [the mother] correctly asserts that past unfitness alone is insufficient; clear and convincing evidence of *present* unfitness is required. However, this does not mean that the juvenile court is prohibited from considering past evidence of unfitness in determining if deprivation is likely to continue. The court is entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue each time the [child was] reunited with [his] mother. Moreover, the juvenile court is not required to reunite a child with a parent in order to obtain current evidence of deprivation or neglect.

(Citations and punctuation omitted.) *In the Interest of C. M.*, 251 Ga. App. 374, 376 (554 SE2d 510) (2001).

Here, the evidence shows that the mother repeatedly kept R. H. L. out of school for his skin disorder which was diagnosed as mild to moderate eczema. She was convinced that he could die from the disease even though she was told otherwise. Both doctors who testified at the hearing verified that R. H. L. suffered from a moderate form of eczema which would not interfere with his ability to attend school. Although she was told she could retain custody of her child if she kept him in school, she refused to do so. She likewise refused to address her mental problems. Following her psychological evaluation it was recommended that she receive counseling before being reunited with her son but she did not do so. During the hearing the mother seemed confused and often rambled and was unresponsive during her testimony. She at one point said that her son was dead. Additionally, she would not agree to obtain psychiatric counseling or take medication in order to regain custody of R. H. L.

"This is clearly present conduct from which a factfinder can infer that appellant . . . is not prepared to support [R. H. L.] in the future." *In the Interest of T. B. R.*, 224 Ga. App. 470, 475 (1) (480 SE2d 901) (1997). Although the mother maintains on appeal that she should be allowed to seek psychiatric care while R. H. L. remains in foster care, "the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Citation and punctuation omitted.) Id. at 475 (1) (c).

Although the mother does not contest the second prong of the termination analysis, we note that the evidence also was sufficient to show that termination of the mother's parental rights was in the best interests of the child. We have held that "the court may consider the child's need for a stable home environment and the detrimental

effects of prolonged foster care. [R. H. L.] need[s] permanence of home and emotional stability or [he is] likely to suffer serious emotional problems." (Citations omitted.) *In the Interest of J. O. L.*, 235 Ga. App. 856, 858 (510 SE2d 613) (1998). Here, the evidence showed that R. H. L. had been in foster care on and off since 1999 and needed a stable home. He was happy and well-adjusted with his foster parents, his performance at school was vastly improved, and he rarely missed school. R. H. L., now twelve years old, told the juvenile court that he wanted to stay with his foster family and go to school. In addition, "[t]hose same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) *In the Interest of S. E. L.*, 251 Ga. App. 728, 732 (3) (555 SE2d 115) (2001). Evidence of the mother's lack of proper educational support and mental instability authorizes the conclusion that termination is in the child's best interests.

Accordingly, we affirm the order of the juvenile court terminating R. H. L.'s mother's parental rights.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 4, 2005.

*James N. Finkelstein*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Shalen S. Nelson, Senior Assistant Attorneys General, Paula K. Hanington*, for appellee.

