A05A1533. IN THE INTEREST OF A. M., a child.
(621 SE2d 567)
JOHNSON, Presiding Judge.
The mother of A. M. appeals from an order of the juvenile court terminating her parental rights. On appeal, she contends: the Douglas County Department of Family and Children Services failed to show by clear and convincing evidence that her parental rights should be terminated; the court failed to make a finding that the continued deprivation will or is likely to cause harm to the child; the court did not consider whether she failed to, for one year or more, develop and maintain a parental bond with the child, to provide care and support for the child, and to comply with a court-ordered plan designed to reunite her with the child; the court based its finding of unfitness on her past conduct alone; the Department failed to conduct a thorough search to place the child with a suitable family member;

---

[20] *Woods*, supra at 30-31 (citations omitted).
[21] See OCGA §§ 16-13-33; 16-13-30 (d); *Woods*, supra at 30-31.

and the Department failed to pursue alternatives to termination.[1] The contentions are without merit, so we affirm the judgment of the juvenile court.

The appropriate standard of appellate review in a case where a parent's rights to her child have been severed is whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the parent's rights to custody have been lost.[2] The factfinding and weighing of evidence are to be done in the trial court under the clear and convincing test.[3] The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met.[4]

OCGA § 15-11-94 (a) provides the two-step procedure for the termination of parental rights. The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[5] If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[6]

1. There was clear and convincing evidence supporting the decision to terminate the mother's parental rights.

Viewed in the proper light, the evidence shows that the mother left one-year-old A. M. and fourteen-year-old V. V. in a homeless shelter in November 2000 and did not return for them. Two days later, the Department filed a deprivation petition, and the children were placed in the temporary custody of the Department. At a hearing, the mother admitted that she was addicted to drugs and had relapsed into drug use.

Thereafter, the Department developed a succession of court-ordered case plans designed to reunite the mother with the children.

---

[1] We note that the Department also sought at one point to terminate the mother's parental rights to A. M.'s older sibling, V. V., but that it stopped pursuing the case as to the older child because she was nearly 18 years old at the time of the termination hearing. Accordingly, the mother's parental rights to V. V. are not at issue in this appeal.

[2] See *In the Interest of T. F.*, 250 Ga. App. 96, 98 (1) (550 SE2d 473) (2001).

[3] Id.

[4] Id.

[5] OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv); *In the Interest of T. F.*, supra.

[6] OCGA § 15-11-94 (a); *In the Interest of T. F.*, supra.

The common elements of these plans included a requirement that the mother remain drug-free, participate in a substance abuse treatment program, submit to random drug tests, enroll in therapy and parenting classes, obtain stable employment and housing, maintain regular visitation with the children, and pay child support.

In May 2001, the juvenile court found that the mother was doing well in substance abuse treatment and had housing and employment. In October 2001, the court returned temporary custody of A. M. to the mother, with the provision that she maintain her residency in the substance abuse program. In March 2002, the court learned that the mother was leaving the program. The court ordered her to provide verification of residence and employment, and cooperate with the substance abuse program's aftercare requirements.

In July 2002, the mother suffered another relapse. A. M. was returned to protective custody, and a deprivation petition was filed. The child was found to be deprived, and the Department was granted temporary custody of the child. A new reunification plan was devised, with basically the same goals as the previous plan.

In July 2003, the court noted that the mother was unemployed, had been in jail for 28 days for driving without a license and using a false name, and was staying in a homeless shelter. She failed to attend the drug treatment program, to submit to random drug screens, or to maintain regular employment. This time, the Department recommended termination of parental rights as the plan goal. The court approved the plan and the Department petitioned to terminate the mother's rights.

In a July 2003 temporary custody hearing, there was evidence that the mother was diagnosed with bipolar disorder and would receive medication and group therapy. In an April 2004 hearing, with the mother present but waiting outside the courtroom, counsel for the mother notified the court that the mother executed forms voluntarily surrendering her parental rights to A. M. Later, the mother changed her mind about surrendering her rights.

The termination hearing was held in June 2004. Although she received notice of the hearing and was represented by counsel, the mother failed to appear.

Testimony at the termination hearing revealed that the mother never provided proof of regular drug treatment or regular employment. She failed to maintain stable housing, and eviction warrants were taken out against her for nonpayment of rent in October 2003, December 2003, January 2004, and April 2004. The mother did not provide any proof that she received mental health treatment from March 2003 through February 2004, except for proof that she attended one appointment. The mother did not regularly visit A. M. or provide any financial support.

The guardian ad litem recommended that the mother's rights be terminated based on her noncompliance with case plan goals, drug relapses, failure to complete drug rehabilitation, and the negative effect on the child of not having a stable parental figure.

There was ample evidence that the mother failed to substantially comply with the case plan requirements for a year or more. The juvenile court was authorized to determine that the evidence provided clear and convincing proof that the mother's parental rights to A. M. had been lost.[7]

Furthermore, as continued deprivation would likely be damaging to the well-being of the child, we find that the juvenile court did not abuse its discretion in terminating the mother's parental rights.[8]

2. The mother is correct that evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required.[9] However, this does not mean that the juvenile court is prohibited from considering past evidence of unfitness in determining if deprivation is likely to continue.[10] The court is entitled to infer from the evidence that, despite the best efforts of the Department, the same pattern of deprivation would continue each time the child was reunited with her mother.[11] The juvenile court is not required to reunite a child with a parent in order to obtain current evidence of deprivation or neglect.[12]

Moreover, contrary to the mother's position, the court did not consider only her past unfitness. In its order, the juvenile court specifically discussed her lack of progress "to date," noting that in the years in which the Department has been involved in the case, the mother has failed to complete any portion of the plan. The court stated, for example, that during the pendency of the case, the mother resided in at least eight locations, never obtained stable employment, never provided financial support for the children, did not maintain regular visitation or develop a bond with A. M., never received the mental health treatment required by the case plan, and failed to appear at the termination hearing. The record is replete with evidence of present unfitness. There was no error.[13]

3. The mother contends the Department failed to make a thorough and exhaustive search for a suitable family member with whom the child could be placed, and the juvenile court made no finding

---

[7] See *In the Interest of C. D. P.*, 211 Ga. App. 42, 43 (3) (438 SE2d 155) (1993).

[8] See *In the Interest of M. J. T.*, 217 Ga. App. 356, 358 (457 SE2d 265) (1995).

[9] See *In the Interest of R. H. L.*, 272 Ga. App. 10, 12 (611 SE2d 700) (2005).

[10] Id. at 13.

[11] Id.

[12] Id.

[13] See *In the Interest of J. M. C.*, 201 Ga. App. 173, 174-175 (410 SE2d 368) (1991).

regarding placement with relatives.[14] The evidence shows that the Department evaluated the maternal grandmother for placement, but that authorities did not approve her home for placement. In April 2004, just before the termination hearing, the mother left the Department a voice message that an additional relative might be available for placement, but she did not provide the relative's name, address or phone number. No other relatives' names were provided to the court for placement. The juvenile court expressly made these findings in its order. Furthermore, there being some evidence that the Department complied with OCGA § 15-11-103 (a) (1), the mother has not shown a basis for reversal for failure to conduct a search for a suitable relative with whom to place the child.[15]

4. The mother contends the court failed to consider whether she complied with OCGA § 15-11-94 (b) (4) (C). That statute provides that the court is to consider whether for more than one year, the parent developed and maintained a bond with the child, provided for the care and support of the child, and complied with the court-ordered plan for reuniting the parent and child. In its order, the juvenile court specifically found that the mother "basically failed to complete any portion whatsoever of her case plan," noting, among other things, that she failed to provide emotional or financial support for the child, that she only sporadically visited the child, and that there was little or no evidence of an appropriate bond between the mother and child. While the court does not use the precise "one year or longer" language of the statute,[16] it does examine the evidence in terms of the mother's progress "to date," and "during the pendency of the case." It also states that she "never" obtained stable employment, "never" provided proof that she paid child support, and that she only sporadically visited with the children during their placement in foster care. The record shows that the court considered the factors enumerated in OCGA § 15-11-94 (b) (4) (C). Furthermore, the evidence supports a finding that the mother failed to meet the requirements of that section. There was no error.

5. The mother contends the juvenile court failed to make a finding that the child's continued deprivation will cause or is likely to cause serious mental, physical or emotional harm to the child.

---

[14] See OCGA § 15-11-103 (a) (1), which provides that where parental rights are terminated, and there is no parent having parental rights, the court shall first attempt to place the child with a relative.

[15] See *In the Interest of G. B.*, 263 Ga. App. 577, 584 (2) (588 SE2d 779) (2003).

[16] The court shall consider "whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights" to develop and maintain a parental bond with the child, to provide for the care and support of the child, and to comply with a court-ordered plan designed to reunite the parent and child. OCGA § 15-11-94 (b) (4) (C).

However, in its order, the juvenile court specifically concluded that "[c]ontinued deprivation will cause serious physical, mental, emotional and moral harm to the child." This enumeration is without merit.

6. The mother contends the Department failed to pursue alternatives to termination. The record belies this argument. The record shows that A. M. was in foster care for nearly four of her five years of life, that the Department had reunification as its goal for several years, that the Department returned the child to the mother's custody at one point, and that termination only became the Department's goal after the mother failed to make progress on her case plan goals for several years, relapsed into drug abuse, went to jail, and lived in a shelter. The record shows that there were no suitable relatives with whom to place A. M. and that reunification was not appropriate.

Children need permanence of home and emotional stability or they are likely to suffer serious emotional problems.[17] Considering all of the needs of the child, including the detrimental effects of prolonged foster care and the evidence, the mother's default is of such magnitude as to warrant a conclusion that the child would be better served by a grant of the petition to terminate.[18]

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 27, 2005.

*Victoria E. Rowan*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Andrea R. Moldovan*, for appellee.

---

[17] See *In the Interest of N. M. H.*, 252 Ga. App. 353, 358 (556 SE2d 454) (2001).
[18] See *In the Interest of M. L. P.*, 236 Ga. App. 504, 510 (1) (d) (512 SE2d 652) (1999).