A07A1126. IN THE INTEREST OF K. D. E., a child.
(654 SE2d 651)

ADAMS, Judge.

The mother of K. D. E. appeals following the termination of her parental rights.

On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the natural parents' rights to custody have been lost. *In the Interest of S. H.*, 251 Ga. App. 555 (1) (553 SE2d 849) (2001). "This court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met." (Citation and footnote omitted.) *In the Interest of C. R. G.*, 272 Ga. App. 161, 161-162 (611 SE2d 784) (2005).

So viewed, the evidence shows the following: The Department of Family and Children Services brought a deprivation petition and request for protective order on April 23, 1998 because K. D. E. was born with cocaine in his system. The mother was allowed to keep custody of K. D. E. provided, inter alia, she remain drug free and participate in drug screenings and a drug rehabilitation program.

However, the petition was subsequently dismissed when the mother could not be located by the date set for the hearing on the petition.

On October 29, 2001, R. Render, the mother's cousin, filed a deprivation petition in the Douglas County Juvenile Court after the mother left K. D. E. and his brother with relatives.[1] The record shows that the mother was incarcerated at that time, and the juvenile court awarded provisional custody to Render in December 2001. In January 2002, the mother was released from incarceration, and a guardian ad litem was appointed to represent the interests of K. D. E. A reunification plan, written by the guardian ad litem, was put in place for the mother and K. D. E. in April 2002. This plan required the mother to obtain and maintain stable housing and employment, become and remain drug free, learn adequate parenting skills, support the children, obey all laws and maintain contact with the children and the guardian ad litem. In July 2002, however, the juvenile court entered an order maintaining custody of the children with Render after finding that the mother had failed to work her case plan and failed to contact the children or the guardian since the last review hearing.

In February 2003, the guardian ad litem entered a report recommending nonreunification as the case plan for the mother because she had not met with her to work on developing a case plan since her release from prison one year earlier, and a motion for nonreunification was subsequently filed. At that time it was recommended that Render be given permanent custody of the children and an order was entered in May 2003 awarding Render permanent custody of the children. However, in December 2003, Render placed the children back into the physical custody of the mother without the court's permission and a case plan report for removal and separation from the mother was subsequently put into effect.

The Department filed a deprivation complaint on January 15, 2004 based on the fact that Render could no longer care for the children. An order for shelter care for K. D. E. was also filed in January 2004, and he was placed in foster care. The Douglas County Juvenile Court subsequently transferred the case to the Juvenile Court of Fulton County because the mother resided there, and that court entered an order accepting transfer of the case on March 24, 2004. The court also continued custody with the Department at that time.

---

[1] K. D. E.'s brother is not involved in this appeal inasmuch as the mother's parental rights were not terminated as to that child since the plan for him involved a "permanent planned living arrangement" since he did not wish to be adopted.

The Department maintained custody of the children throughout 2004. In February 2005, a citizen review panel recommended nonreunification as the plan for K. D. E. A hearing was held in March 2005; the mother was present. Following the hearing, the juvenile court entered an order for reunification as to K. D. E.[2] even though the court found that the mother had a history of unrehabilitated drug use, was without adequate housing for herself and the children, and without a means to support them financially. In July 2005, the mother was again incarcerated, this time because she violated her probation by failing to meet with her probation officer. In September 2005, the court entered another order for a dual track plan of reunification and termination of parental rights. In that order the court found that the mother was no longer enrolled in the Odyssey Drug Treatment Center but that she was to begin treatment in another facility. The court further noted that the mother still did not have stable housing or employment. The order does not mention the mother's incarceration.

A deprivation petition filed by the Department in January 2006 stated that the mother was incarcerated as of January 17, 2006. Following a hearing, the court entered an order finding that K. D. E. and his brother were still deprived. The court further found that the mother had not completed her case plan and had failed to complete a drug treatment program. The court noted that although at one point she had obtained stable employment sufficient to support herself and her children, she lost her job when she was incarcerated a second time for a probation violation. The "concurrent" case plan for reunification/termination of parental rights remained in place at that time.

The Department filed a motion for nonreunification on March 27, 2006. A citizen review panel recommended that the plan be changed to adoption for K. D. E., and the court approved the panel's recommendation on April 11, 2006. The Department entered a report at the May review hearing stating that the mother's whereabouts were unknown; the mother was apparently still in prison at that time. The Department also reported that she had failed to complete any of the goals of her case plan, including resolving criminal charges, staying out of jail, completing a substance abuse treatment program, obtaining a legal source of income, obtaining safe and appropriate housing and completing appropriate parenting skills training. The report further recommended that a termination petition be filed so that a

---

[2] The mother had given birth to another child by the date of this hearing. That child was placed in the custody of his father with the condition that the mother not reside in the home.

more permanent plan could be implemented for K. D. E. The Department subsequently filed a petition for termination of parental rights, alleging that the mother's whereabouts were still unknown, she had not completed her case plan goals and that K. D. E. was still deprived. The mother was released from incarceration in August, and was present for the hearing held on the petition on October 31, 2006. On November 16, 2006, the juvenile court entered an order terminating the mother's parental rights and this appeal followed.

Georgia law provides for a two-step process that must be followed in determining whether to terminate parental rights. OCGA § 15-11-94 (a) requires that the trial court "first determine whether there is present clear and convincing evidence of parental misconduct or inability." Parental misconduct or inability is determined under the four criteria set forth in OCGA § 15-11-94 (b) (4) (A) (i)-(iv). Those four factors are: (1) the child is deprived; (2) the lack of proper parental care and control by the parent whose rights are being terminated is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are shown to exist by clear and convincing evidence, then the court must also determine whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a). *In the Interest of C. M.*, 275 Ga. App. 719 (621 SE2d 815) (2005).

1. In her first two enumerations of error, the mother challenges the juvenile court's findings as to the third and fourth factors, arguing that the juvenile court erred by terminating her parental rights without giving sufficient consideration to her present circumstances and challenging the sufficiency of the evidence to support the finding that K. D. E. would be harmed by continued deprivation. We will thus focus our review accordingly.

In deciding whether the deprivation is likely to continue, the mother is correct in her contention that the proper consideration is whether there is clear and convincing evidence of present unfitness. As we have observed:

> Although it is well settled that a juvenile court may consider the past conduct of the parent in determining whether the conditions of deprivation are likely to continue, *In the Interest of L. G.*, 273 Ga. App. 468, 474 (2) (c) (615 SE2d 551) (2005), it is equally true that "evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of

*present* unfitness is required." (Emphasis supplied.) *In the Interest of A. M.*, 275 Ga. App. 630, 633 (621 SE2d 567) (2005).

*In the Interest of D. D. B.*, 282 Ga. App. 416, 418-419 (1) (638 SE2d 843) (2006). Moreover, although it is also true that in considering recent improvements, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation, the record must nevertheless contain clear and convincing evidence that the cause of the deprivation is likely to continue. *In the Interest of T. B.*, 249 Ga. App. 283, 287, n. 8 (548 SE2d 45) (2001).

As to this issue, the evidence in this case showed that the mother had been released from prison in early August 2006 and had contacted the Department within two days of her release. She met with her caseworker and gave her all her parole information as well as her contact number and address. The caseworker testified that the case plan in place at that time required the mother to obtain parenting skills, a source of income and housing and complete a drug assessment. The caseworker further testified that the mother presented a certificate showing that she had completed a parenting skills class while she was incarcerated. However, at that time the mother was staying with her sister and did not have a place of her own for her and the child; nor did she have a source of income to support the child. According to the caseworker, a home evaluation had not been done and she did not know if the home was suitable for K. D. E. The caseworker also testified that the mother had been only briefly employed since she was released from jail and that the mother showed her the paperwork indicating she had applied for another job. According to the caseworker the mother had maintained contact with the Department since her release and had exercised all scheduled visits with K. D. E. except those cancelled by the Department, and there appeared to be a bond between the mother and K. D. E. The caseworker testified that the Department had not requested that the mother undergo any drug screening since her release and that her probation officer had indicated that the two drug screens performed in August were negative; the caseworker did indicate that the Department had requested that the mother undergo a drug assessment and that she had received nothing from the mother showing the assessment had been done. The caseworker also testified that the Department had never received any type of child support from the mother. The caseworker testified that K. D. E.'s foster mother wished to adopt him and stated his need for permanency given the length of time he had been in foster care.

The mother also testified at the termination hearing. The mother testified that K. D. E., who was eight years old at the time of the

hearing, lived with her until about age five.[3] The mother testified she had been incarcerated twice, the first time in late 2001 for approximately six months for forgery and the second time, which was for a probation violation,[4] from July 2005 until August 2006. She testified that she asked Render to take care of K. D. E. while she was incarcerated the first time, that Render returned the children to her when she was released from jail, but that they were removed from her custody when she tried to obtain the paperwork necessary to enroll them in school. The mother testified that she completed a parenting course while in prison but that there was no drug treatment course available there; however, before her incarceration, she had attended six weeks of an eight-week drug treatment program until she got pregnant and the associated morning sickness caused her to be unable to attend. The mother testified that the last time she took illegal drugs was in April 2004, approximately two and one-half years before the termination hearing. According to the mother, an advocate worker had visited the home where she was currently living and indicated the home was suitable, and she thought this information had been given to the caseworker. The mother testified that her drug screens had been negative since she had been released from prison and she was not required to go to treatment following a drug assessment performed after she was released from prison. The mother subsequently submitted a report from her probation officer verifying these results.

K. D. E. also testified. He said he wanted to live with his mother but if that was not possible he would want to be with his foster family. He also told the court that he liked it when his mother came to see him, that he would like to continue seeing her and that he loved her.

Although the mother's past was far from exemplary, we agree with the mother that the evidence presented did not clearly and convincingly establish that K. D. E.'s deprivation would continue and not likely be remedied. Although it is true, as the juvenile court found, that the mother had not met all the goals of her case plan, it is likewise true that the mother had only been released from prison approximately three months prior to the termination hearing. Since her release, her drug screens were negative, she was not required by her probation officer to obtain any further drug treatment, and she had not been recommended for further treatment for a substance abuse

---

[3] Other evidence of record shows the child had not been living with his mother since he was about three and one-half years old.

[4] The mother testified she violated her probation by failing to meet with her probation officer.

problem following her release from prison. Also, although the case-worker testified that the Department had not attempted to conduct a home evaluation or visit the home to see if it was adequate for the child to live there, the court allowed testimony that her current living situation had been deemed adequate by a child advocate worker. And she met her case plan goal of completing a parenting course while in prison. The mother was visiting with the child, and the caseworker testified they appeared to be bonded. The child informed the court that he wanted to live with his mother, that he likes to visit with her, and that he wants to continue to see her. The main component of her case plan that seemed to be missing at the time of her hearing was stable employment, and the mother testified she had submitted an application for a job the previous day.

Moreover, even if there were sufficient evidence before us to support a finding of continued deprivation, termination of the parental rights of the mother would not be warranted here because there is no evidence in the record that any continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. Although a caseworker gave general testimony in response to leading questions that the Department was concerned about the detrimental effects of foster care on the child, there was no evidence that K. D. E. was experiencing difficulties, such as behavioral or social issues, from being in foster care or that he would experience difficulties if a permanent placement was not put into place; and there was no testimony that a continued relationship with his mother would result in any potential or actual harm to the child. To the contrary, the child testified he wanted to keep seeing his mother. See, e.g., *In the Interest of B. F.*, 253 Ga. App. 887, 891-892 (560 SE2d 738) (2002).

> Termination of parental rights is a remedy of last resort which can be sustained only when there is clear and convincing evidence that the cause of the deprivation is likely to continue. [Cit.] The evidence is not clear and convincing, at least at this time, that the deprivation is likely to continue. . . . While we are reluctant to reverse the juvenile court's determination, no judicial determination is more drastic than the permanent severing of the parent-child relationship. [Cits.] In light of the mother's recent progress and the attachment the child has to her, we reverse the judgment and remand the case for the establishment of a reunification plan, subject to whatever disposition is warranted by future events and those occurring since the last termination hearing.

*In the Interest of K. M.*, 240 Ga. App. 677, 680-681 (523 SE2d 640) (1999). See also *In the Interest of R. C. M.*, 284 Ga. App. 791 (645 SE2d 363) (2007) (termination of parental rights reversed where based on father's previous incarceration and failure to achieve goals within first 45 days of his release); *In the Interest of A. A.*, 252 Ga. App. 167, 173 (555 SE2d 827) (2001) (parents substantially complied with case plan goals and the fact they did not pay child support not sufficient, standing alone, under facts of that case to warrant termination); *In the Interest of L. J. L.*, 247 Ga. App. 477 (543 SE2d 818) (2001) (mother's prior drug use did not support termination of parental rights in light of significant recent improvements); *In the Interest of K. J.*, 226 Ga. App. 303, 305 (1) (486 SE2d 899) (1997) (juvenile court's finding that the mother was not able to maintain an independent lifestyle premature when the termination hearing was held less than four months after the mother released from incarceration).

2. Based on the evidence before us, we also agree with the mother that the juvenile court erred by finding that she abandoned K. D. E. within the meaning of OCGA § 15-11-94 (b) (3). Thus, contrary to the Department's argument, the juvenile court's finding of parental misconduct or inability cannot be sustained on that basis.

*Judgment reversed and case remanded with direction. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 21, 2007.

*Nathan A. Hayes, Curtis W. Miller*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General*, for appellee.