D

**FOURTH DIVISION
DOYLE, P. J.,
MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 2, 2015**

# In the Court of Appeals of Georgia

A14A1809. IN THE INTEREST OF S. R. R.

MILLER, Judge.

Following a hearing, the juvenile court terminated the mother's parental rights with respect to her son, S. R. R. We granted the mother's application for discretionary review, and she appeals the juvenile court's order.[1] The mother contends that the evidence was insufficient to support the termination of her parental rights. After a thorough review, this Court finds that the evidence does not clearly and convincingly show that the mother is presently unfit or that the cause of S. R. R.'s deprivation is likely to continue and cause serious harm. Accordingly, we reverse the juvenile court's decision.

---

[1] The juvenile court terminated the putative father's parental rights, and he is not a party to this appeal.

In considering the mother's appeal, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should have been terminated.

(Citation omitted.) *In the Interest of A. B.*, 311 Ga. App. 629 (716 SE2d 755) (2011). Nevertheless, in conducting our review, we must proceed

with the knowledge that there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. The right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances.

(Citations omitted.) *In the Interest of C. J. V.*, 323 Ga. App. 283 (746 SE2d 783) (2013). Moreover, clear and convincing evidence of present or current parental unfitness, as opposed to past unfitness, is required to terminate a mother's rights to her natural child. See *In the Interest of T. F.*, 250 Ga. App. 96, 98 (1) (550 SE2d 473) (2001).

So viewed, the evidence shows that the mother suffers from several disabling health problems, including multiple sclerosis, diabetes, fibromyalgia and lupus. The

2

mother is under continuous medical care for her health issues and she takes several prescription medications to control her symptoms.[2] When S. R. R. was born on October 1, 2010, he was hospitalized for two weeks for an enlarged heart. Within weeks of his birth, the mother placed S. R. R. in the care of a friend.[3] S. R. R. lived in the friend's home until June 21, 2012 when he was removed by the Division of Family and Child Services ("DFCS"). The juvenile court subsequently found S. R. R. to be deprived and extended the temporary grant of custody to DFCS until June 21, 2013.

Pursuant to the deprivation order, DFCS initiated a case plan which provided for non-reunification and adoption. The case plan required the mother to maintain consistent contact with S. R. R. through scheduled bi-weekly visitation and pay child support. The juvenile court subsequently granted the mother's motion to modify the temporary custody order so that she could have weekly visitation with S. R. R.

The mother completed most of her case plan goals, including completing her parenting and anger management classes, obtaining a psychological evaluation,

---

[2] The mother's prescribed medications include morphine, hydrocodone, and xanax.

[3] The mother also has three older children who live with their father.

successfully completing her probation supervision, and paying some child support. Importantly, the mother has consistently visited with S. R. R., who has bonded with her and calls her "Mommy." The mother also buys clothes, toys and books for S. S. R. and brings him his favorite foods and books to read during visitation.

The mother has lived in the same home since August 2012, and the home includes a separate bedroom for S. S. R., which contains a child's bed, and numerous toys and decorations. The mother receives approximately $740 per month in SSI disability income, which covers her rent, utilities and car insurance, and she owns her van outright.[4] The mother also testified that she intended to apply for food stamps or obtain employment to supplement her disability income if she can find a position that will accommodate her disability.

Despite the mother's efforts to complete her case plan goals and bond with her son through regular visitation, DFCS filed its petition to terminate the mother's parental rights on July 17, 2013. The petition alleged that the mother's home was not suitable housing; the mother and the putative father were living together despite a

---

[4] The mother's disability income leaves her with very little money after she pays her expenses.

4

history of domestic violence; and the mother was living with and supporting members of the putative father's family with her disability income.

The evidence presented at the termination hearing, however, showed that the putative father had moved out of the mother's home in March 2013, and the putative father's family members had moved out in August of that year.

The evidence also showed that, beginning in August 2013, the mother worked as a driver, earning approximately $80 per week from one employer and a total of $800 in income from another employer. At the time of the termination hearing, the mother had a job offer to work as a driver for her second employer at a salary of $500 per week.

With regard to the condition of the mother's home, the DFCS placement manager in charge of S. R. R.'s case attempted to visit the mother's home on several occasions when the mother was not home, and was only able to complete one visit. During one attempted visit, the placement manager found beer cans strewn around the yard. The evidence also showed that the mother smokes cigarettes, however, she testified at the hearing that she no longer smokes inside the home.

Photographs of the outside of the mother's residence, which were taken during the placement manager's visits, showed accumulated trash. The mother testified at the

5

termination hearing that her landlord was supposed to remove the trash and, when he failed to do so, she personally paid to have the trash hauled away. The mother introduced photographs at the continued termination hearing showing that the trash had been removed and the inside of her home was clean.

The mother contends that the evidence was insufficient to support the termination of her parental rights. We agree.

A juvenile court's termination of parental rights is a two-step process:

The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) *In the Interest of T. F.*, supra, 250 Ga. App. at 98 (1); see also

former OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv).[5] Moreover, where as here, the child

is not in the parent's custody the juvenile court shall consider

> whether the parent without justifiable cause has failed significantly for
> a period of one year or longer prior to the filing of the petition for
> termination of parental rights: (i) To develop and maintain a parental
> bond with the child in a meaningful, supportive manner; (ii) To provide
> for the care and support of the child as required by law or judicial
> decree; and (iii) To comply with a court ordered plan designed to reunite
> the child with the parent[.]

(Citation omitted.) *In the Interest of C. J. V.*, supra, 323 Ga. App. at 284; see also

former OCGA § 15-11-94 (b) (4) (C). DFCS had the burden of proof in this case. *In

the Interest of M. J. T.*, 255 Ga. App. 553 (565 SE2d 877) (2002).

---

[5] In 2013, the General Assembly adopted a new Juvenile Code to replace Chapter 11 of Title 15 of the Georgia Code. Ga. L. 2013, p. 294, § 1-1. The new Juvenile Code became effective on January 1, 2014, and applies to all juvenile proceedings commenced on and after such date. Ga. L. 2013, p. 294, § 1-1.

Although the termination order in this case was not entered until January 15, 2014 and the trial court specifically referenced the new code in its termination order, the petition to terminate the mother's parental rights was filed on July 17, 2013, and the termination hearing commenced on December 13, 2013 prior to the new code's effective date. Accordingly, we apply the former statute, OCGA § 15-11-94, in this case.

The mother did not appeal the juvenile court's deprivation orders. Accordingly, for purposes of our review, we assume that the evidence was sufficient to show that S. R. R. was deprived due to the mother's past lack of proper parental care or control. *In the Interest of C. J. V.*, supra, 323 Ga. App. at 284. Nevertheless, we emphasize that

> termination of parental rights is a remedy of last resort and can be sustained only when there is clear and convincing evidence that the cause of the deprivation is likely to continue. In the instant case, the evidence is not clear and convincing, at least at this time, that the deprivation is likely to continue.

(Citations and punctuation omitted.) *In the Interest of C. S.*, 319 Ga. App. 138, 148 (1) (735 SE2d 140) (2012).

This Court will not sustain the termination of a mother's right to raise her child, based on either her poverty or her physical disabilities, when neither render her incapable of caring for her child. See *In the interest of C. J. V.*, supra, 523 Ga. App. at 286-287. Moreover, neither the mother's past unfitness nor her lack of future employment prospects, whether related to her disability or not, is sufficient to terminate her parental rights. See *In the Interest of T. F.*, supra, 250 Ga. App. at 98 (1) (evidence of past unfitness standing alone is insufficient to terminate parental

8

rights); *In re M. M.*, 263 Ga. App. 353, 359 (1) (587 SE2d 825) (2003) (mother's lack of employment and lack of prospects for future employment is insufficient to terminate her rights).

Here, with regard to whether S. R. R.'s deprivation is likely to continue, the juvenile court found that S. R. R. had essentially never resided with the mother, the mother had very limited income, the mother and putative father resided in the same home and they had a contentious relationship,[6] the mother was taking multiple medications which impacted her ability to provide for S. R. R.'s day-to-day care, and the mother's home was in a continuous state of filth. The juvenile court also focused on the mother's lack of credibility.[7] Even construing the evidence in the light most favorable to the juvenile court's order, the evidence presented at the termination hearing does not clearly and convincingly show that the mother is presently unfit and that S. R. R.'s deprivation is likely to continue and cause serious harm.

_____

[6] Although the mother and the putative father do not live together, the evidence shows that they do not get along. On one occasion an argument between them resulted in the mother's arrest for allowing the unlicensed putative father to drive her van and the putative father's arrest for possession of marijuana. On another occasion, the putative father showed up at the mother's house and got into an argument with her. When police responded to the mother's home, the putative father left.

[7] Specifically, the juvenile court found that the mother's testimony that she no longer smoked in the house and did not drink alcohol was not credible.

The evidence showed that the mother completed most of her case plan goals, including parenting and anger management classes; she paid some child support; she consistently visited with S. R. R.; she presented evidence that she is capable of caring for her son despite her physical disabilities; and she has bonded with him. Although the mother takes several medications, those medications are prescribed by her doctor. Moreover, no evidence showed that the mother's health issues render her incapable of caring for S. R. R. See *In the Interest of J. S. B.*, 277 Ga. App. 660, 663 (2) (d) (627 SE2d 402) (2006) (reversing termination of mother's parental rights where no expert witness testified that mother's antisocial personality disorder or learning disability would be detrimental to her children).

The evidence also showed that the mother presently has a clean and stable home with a separate bedroom and child's bed which she decorated for S. R. R. Moreover, contrary to the juvenile court's finding, the evidence presented at the termination hearing showed that the putative father had not been living with the mother for several months. Finally, the evidence showed that the mother has supplemented her disability income with work as a driver, and she presented testimony from her second employer that she has the prospect of regular employment.

Accordingly, while the evidence shows that the mother is disabled and lives on limited means, the evidence does not clearly and convincingly show that she is presently unfit or that S. R. R.'s deprivation is likely to continue and cause serious harm. Consequently, we must reverse the juvenile court's order terminating the mother's parental rights.

*Judgment reversed. Doyle, P. J., and Dillard, J., concur.*