622 S.E.2d 892 (2005)
276 Ga. App. 211
In the Interest of M.M., a Child.
No. A05A1503.
Court of Appeals of Georgia.
November 3, 2005.
*893 Josephine Jones, Macon, for Appellant.
Thurbert Baker, Attorney General, Shalen Nelson, Senior Assistant Attorney General, Charissa Ruel, Assistant Attorney General, W. Ashley Hawkins, Forsyth, for Appellee.
BARNES, Judge.
The mother of M.M. appeals from the order terminating her parental rights to her four-year-old child. The father is not a party to this appeal. She contends there was insufficient clear and convincing evidence to warrant the termination of her parental rights. Because the evidence supports the trial court's decision, we affirm. In considering a challenge to the sufficiency of the evidence in a parental termination of rights case, the evidence must be viewed in the light most favorable to the juvenile court's determination. In the Interest of D.B., 242 Ga.App. 763, 531 S.E.2d 172 (2000). When the evidence shows that any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost, we defer to the juvenile court's factfinding. Id.
So considered, the evidence shows that the Department of Family and Children Services initially became involved with M.M. in August 2002 after receiving a report that the two-year-old was present during a domestic dispute in his home. The agency did not remove M.M. at that time. However, in November 2002 after another incident of domestic violence involving his parents, the child was removed from his home and placed *894 in the Department's emergency custody. This was approximately the sixth domestic incident involving the parents since they moved to the area in January 2002. The mother was too intoxicated at the time to identify any relatives with which to place M.M. M.M.'s parents were not married at the time.
A petition was filed in the juvenile court by DFACS alleging deprivation, and in December 2002, following an adjudicatory hearing, M.M. was found to be deprived. The Department was subsequently granted temporary legal custody. The deprivation order was not challenged. The court's order also incorporated a reunification case plan which required the mother to visit M.M. regularly, remain alcohol-free, receive alcohol-abuse treatment, complete a domestic violence program, and cooperate with DFACS.
The parents married in February 2003, and in June 2003, the Department implemented another reunification case plan which included goals for both parents. The goals in the new case plan were essentially the same as the earlier plan; however, the father was not required to obtain substance abuse treatment. At the June 19, 2003 judicial review hearing, the juvenile court found that the permanency plan was still reunification, and that the parents had "housing, they are going to church, the mother is employed full time and the father is working." It further found that the parents "are doing well and as soon as the parents complete their case plan, this court will return said child."
In July 2003, the father was arrested for simple battery after slapping the mother, and obstruction of a 911 call. He was arrested on similar charges in August 2003. In November 2003 the father was arrested again for domestic violence. The mother was arrested at the same time for deposit account fraud.
In January 2004, after the mother apparently separated from the father and moved to a neighboring county, the father moved to Pennsylvania. DFACS petitioned to have the case transferred to the new county. During the February 2004 hearing on the petition, the mother informed the Department that she had also moved to Pennsylvania to reunite with her husband. The juvenile court, thereafter, issued an order dismissing the petition to transfer the case and maintaining custody of M.M. with the Department. In March of that year, DFACS notified the court of its intention to seek nonreunification, and filed another motion for extension of custody, which the court granted. At the hearing on the petition, the court found that the mother and father "have done nothing to comply with the reunification plan."
In May 2004, the Department implemented a nonreunification case plan, in which it noted M.M.'s lack of attachment to his mother and father, and need "to have his basic needs met" and for permanency. The juvenile court incorporated the plan in a supplemental order the following month. It noted that the parents had no intention of returning from Pennsylvania and that they called the Department "approximately one time per month," the mother never completed alcohol or domestic abuse counseling, and there was no contact with or cooperation from the father. In August 2004, DFACS filed a petition to terminate the couple's parental rights, which was granted in January 2005, following a hearing.
A termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
(Footnotes omitted.) In the Interest of V.M.T., 243 Ga.App. 732, 735-736(3), 534 S.E.2d 452 (2000).
*895 Regarding the first factor, the mother did not appeal from the juvenile court's original order finding that M.M. was deprived or from any of the subsequent deprivation and extension orders that included the same finding. She is therefore bound by the prior finding of deprivation made by the juvenile court. In the Interest of D.L.D., 248 Ga.App. 149, 153, 546 S.E.2d 11 (2001).
As to the second and third factors, that a lack of parental care or control caused the children's deprivation and that such cause of deprivation is likely to continue or unlikely to be remedied, the record contains clear and convincing evidence to support the findings on both criteria. Evidence of past conduct may properly be considered in determining whether the deprivation would likely continue. See In the Interest of J.O.L., 235 Ga.App. 856, 858, 510 S.E.2d 613 (1998).
In determining whether the cause of the deprivation was that the child was without proper parental care and control, the juvenile court is authorized to consider the factors in OCGA § 15-11-94, including "evidence of past egregious conduct of the parent toward the child ... of a physically, emotionally, or sexually cruel or abusive nature." OCGA § 15-11-94(b)(4)(B)(iv). Likewise, OCGA § 15-11-94(b)(4)(C) requires the court to consider
whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.
In this circumstance, M.M.'s state of deprivation was the result of his parents' continuing domestic altercations, some of which occurred in the child's presence, and which continued even after M.M. was removed from the home. This conduct reflects little regard for the emotional well-being and stability of the child. Second, the evidence established that the mother failed to comply with the reunification plan ordered by the court for almost two years. Neither parent completed domestic violence classes, and the mother did not complete counseling for alcohol abuse. Additionally, the parents moved to Pennsylvania, and although the evidence showed that the mother contacted DFACS at various times, neither parent visited M.M. for over one year. There is no evidence that the mother ever called, sent letters, cards or gifts to M.M. during the time that she was absent from his life. The caseworker testified at the termination hearing that the mother would call or send letters to the Department periodically from Pennsylvania expressing her desire to have her son back and asserting that she was working on her case plan. The mother would not, however, provide any documentation to the Department. Moreover, the mother did not contribute to M.M.'s support while he was in DFACS custody. Although the case plan did not specifically require the mother to pay child support, "[a] parent ... has a statutory duty to support her children, with or without a court order. OCGA § 19-7-2." (Citation and punctuation omitted.) In the Interest of J.J., 259 Ga.App. 159, 162, 575 S.E.2d 921 (2003).
The mother testified that she completed alcohol-abuse counseling, but that the documentation was in Pennsylvania, and that she was not told that she had to undergo counseling for domestic violence. She further testified that she did not visit M.M. after she moved to Pennsylvania because she did not have transportation, and that she had not provided any support to M.M. because she was "never authorized to pay child support."
Notwithstanding the mother's testimony, she showed no justifiable cause for her failure over the approximately two-year period to meet the goals of her case plan, provide support for her child, or visit him for over one year. Taken together, these facts provide sufficient evidence that M.M. was without proper parental care and control, and that such caused his deprivation. See In the Interest of J.S., 232 Ga.App. 876, 879-880(1), 502 S.E.2d 788 (1998).
*896 The evidence also shows that the deprivation is likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Citation omitted.) In the Interest of R.W., 248 Ga.App. 522, 524(1), 546 S.E.2d 882 (2001). The evidence showed a history of domestic violence for which neither parent had sought counseling. The mother's failure to complete her case plan, visit M.M. for extended periods of time or support him, coupled with the evidence of past deprivation, authorized the juvenile court's finding that the deprivation of M.M. would likely continue should the child be returned to the mother's custody. The juvenile court could infer from the evidence "that, despite the best efforts of the Department and many other social workers and charities, the same pattern of deprivation would continue if the [child was] reunited with [his] mother." (Citation, punctuation and footnote omitted.) In the Interest of N.L., 260 Ga.App. 830, 835, 581 S.E.2d 643 (2003).
As to the fourth factor, evidence of the domestic violence in M.M.'s presence and the mother's failure to comply with the requirements of the reunification plan authorized the juvenile court to find that the child's continued deprivation would have a detrimental effect on him. In the Interest of P.O.M., 255 Ga.App. 534, 536(3), 566 S.E.2d 334 (2002). The juvenile court was authorized to consider M.M.'s need for a stable home situation, without which he is likely to suffer serious emotional problems. Id.
Finally, the record supports the finding that the termination of the mother's parental rights is in the best interest of the child. "The same factors that show the existence of parental misconduct or inability may also support [a] juvenile court's finding that terminating the parent's rights would be in the child's best interest." (Citation omitted.) In the Interest of D.L., 268 Ga.App. 360, 360-361, 601 S.E.2d 714 (2004). M.M. has been in foster care for more than two years, during which time the parents have failed to complete the reunification plan. He did not see his parents for over one year and has bonded with his foster parents, who have expressed interest in adopting him. M.M. refers to his foster parents as Mommy and Daddy. He is only four years old and should not be forced to wait any longer for a permanent home.
Judgment affirmed.
RUFFIN, C.J., and JOHNSON, P.J., concur.