A06A0309, A06A0310. In the Interest of C. S. et al., children (two cases).
(632 SE2d 665)

Smith, Presiding Judge.

A juvenile court terminated the parental rights of the mother of three-year-old L. S., five-year-old F. S., six-year-old S. S., and eight-year-old C. S. The court also terminated the parental rights of the father as to his three children, L. S., F. S., and S. S. In Case No. A06A0309, the mother appeals, arguing that the evidence was insufficient to warrant the termination of her parental rights. In Case No. A06A0310, the father appeals, also challenging the sufficiency of the evidence, and arguing that the court erred in denying his motion to dismiss for insufficient service of process. We find no error and affirm.

"On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Citation and footnote omitted.) *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001). Viewed in the light most favorable to the trial court's findings, the evidence showed that in 2001 the father was arrested for assaulting the mother, to whom he was married. The Tennessee Department of Family and Children Services (DFACS) took custody of the mother's three children[1] while she was hospitalized for injuries she sustained from the assault. In 2003, the father was again arrested for assaulting the mother, and is currently incarcerated for that conviction.

In June 2004, the children were taken into immediate DFACS custody in Whitfield County, Georgia, when the maternal grandmother notified the department that she could not care for the children and did not know the whereabouts of the mother. A few days later, DFACS filed a deprivation petition. The juvenile court found the children to be deprived because (i) the mother had left the children with family members who were unable to care for them, (ii) the mother's whereabouts were unknown, (iii) the father was incarcerated, and (iv) the youngest child had a rare blood disorder that required frequent medical attention. DFACS developed a plan for reunification that required both the mother and the father to complete a psychological examination and counseling sessions as needed, attend and complete parenting classes, obtain and maintain stable housing, pay child support, maintain meaningful contact with the children, attend and complete a drug/alcohol treatment program, and remain drug and alcohol free for six months. The case plan also

---

[1] L. S. was not born until March 2003.

required the mother to attend a support group for domestic violence and a 12-step co-dependency group.

A citizens review panel conducted a review hearing in September 2004, and neither the mother nor the father attended. The panel found that the father remained incarcerated and that the mother did not complete the psychological evaluation or the parenting classes. The mother also failed to complete both the domestic violence group requirement and the co-dependency group requirement, nor did she pay child support. The panel further found that the mother only visited the children on three occasions in a three-month period. The panel recommended the termination of parental rights and requested judicial review.

In April 2005, the juvenile court held a review hearing after which it adopted the recommendation of the review panel and ordered a permanency plan for termination. In May 2005, DFACS filed a petition for termination of parental rights, or in the alternative, petition for extension of custody. The court held a hearing on the petition and in August 2005 terminated the parental rights of both the mother and the father.

1. On appeal, both the mother and the father contend that the evidence was insufficient to support the termination. We disagree.

> OCGA § 15-11-94 (a) provides the two-step procedure for the termination of parental rights. The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Citations and footnotes omitted.) *In the Interest of T. F.*, 250 Ga. App. 96, 97-98 (1) (550 SE2d 473) (2001). See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv).

(a) *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we address each of the statutory factors.

(i) *Deprivation.* Since both parents failed to appeal the juvenile court's deprivation order, they were bound by the court's findings of

fact for purposes of the termination hearing. See *In the Interest of M. H. W.*, 277 Ga. App. 318, 319 (1) (a) (626 SE2d 515) (2006).

(ii) *Lack of Parental Care and Control.* The mother concedes that a lack of parental care and control was the cause of the children's deprivation.

The father argues that his incarceration for aggravated assault alone is insufficient to support termination of his parental rights. Although that is true, it is nevertheless a factor that the juvenile court may consider in determining whether the children are without proper parental care and control. OCGA § 15-11-94 (b) (4) (B) (iii).

(iii) *Lack of Care or Control Likely to Continue.* The mother argues that there was insufficient evidence that the deprivation was likely to continue. Here, however, the evidence showed that the mother failed to complete her case plan including the requirement that she attend a 12-step co-dependency course. The evidence also showed that the mother rarely paid child support even though she was gainfully employed for several months prior to the termination hearing and even though she received money from the father's disability payments.

The father argues that he made substantial steps toward completing his case plan even though many of the goals could not be achieved due to his incarceration.[2] But evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to the parent. *In the Interest of M. M.*, 276 Ga. App. 211, 214 (622 SE2d 892) (2005). In this case, a history of domestic violence exists between the mother and the father. See id. at 215. The court found that the father also had a history of domestic violence in other relationships and that he always blamed the victim. These children witnessed this violence on at least one occasion. Moreover, the father failed to receive domestic violence counseling as required by the case plan. Although the father's imprisonment alone cannot be the basis for termination premised upon parental unfitness, the domestic violence between the mother and the father presents an aggravating circumstance. See *In the Interest of B. M. L.*, 239 Ga. App. 511, 512 (521 SE2d 448) (1999) (repeat offender status is an aggravating circumstance).

The evidence outlined above, coupled with the evidence of past deprivation, was sufficient to support the juvenile court's finding that the deprivation of the children would likely continue should the

---

[2] The record reveals that the father completed the parenting course and a drug and alcohol education program. But the trial court found that the contents of those programs were unknown and that the father did not complete a required assessment to determine his progress on the case goals.

children be returned to the custody of the parents. See *In the Interest of M. M.*, supra, 276 Ga. App. at 215.

(iv) *Serious Harm to the Child.* Evidence of domestic violence in the children's presence and the failure of the mother and the father to complete the reunification plan is sufficient to support the trial court's finding that the children would suffer mental and emotional harm if returned to the parents. See *In the Interest of M. M.*, supra, 276 Ga. App. at 215.

(b) *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interests of the children, in light of the physical, mental, emotional, and moral condition and needs of the children. OCGA § 15-11-94 (a). The same evidence showing parental misconduct may, and here does, establish that the children's best interests required the termination of the parental rights of the mother and the father. See *In the Interest of J. B. A.*, 230 Ga. App. 181, 184-185 (2) (495 SE2d 636) (1998). In addition, the juvenile court could have considered the children's need for a stable home environment, especially given the length of time the children have been in DFACS custody.[3] See *In the Interest of C. T. M.*, 278 Ga. App. 297, 302 (2) (b) (628 SE2d 713) (2006). Furthermore, the mother failed to support the children adequately even when employed and failed to show that she had maintained stable housing, only presenting evidence that she lived with her mother.

Although the evidence showed that the father is to be released from prison in the fall of 2006, there is no evidence of his plan or ability to provide a stable home for the children. The father sent the children birthday cards (and necklaces that the mother forgot to deliver) but has had no other significant contact with them since his incarceration in 2003. In fact, the father has been incarcerated for most of L. S.'s three years of life.

Under these circumstances, clear and convincing evidence supported the juvenile court's determination that termination was in the children's best interests. Since a rational trier of fact could have found by clear and convincing evidence that misconduct or inability by the mother and the father existed and that termination of parental rights was in the best interests of the children, the juvenile court did not err in terminating the parents' rights to their children.

2. The father argues that the trial court erred in denying his motion to dismiss the termination petition for insufficiency of service of process. He argues that he was not personally served under the

---

[3] C. S. has been in DFACS custody on two prior occasions, and F. S. and S. S. on one prior occasion. C. S. was in DFACS custody in Tennessee for nearly three years.

guidelines of OCGA § 9-11-4 (c). At the time the termination petition was filed, the father was incarcerated in Tennessee. He claims that the petition and summons were sent by certified mail, signed for by a correctional facility employee, and then given to him. The trial court found that the father personally acknowledged receipt of the certified mail documents by signing an acknowledgment.

Under OCGA § 15-11-39.1 (a), when "a party to be served is outside this state but he or she can be found . . . , service of the summons may be made either by delivering a copy thereof to such party personally or by mailing a copy to him or her by registered or certified mail. . . ." Here, the father admitted that he had received a copy of the petition and summons and the trial court found that the father acknowledged receipt. The correctional employee who delivered the certified mail to the father was acting under the direction of the court for purposes of the Juvenile Court Code. See OCGA § 15-11-39.1 (c). We therefore hold that the court did not err in finding that service upon the father was sufficient. *In the Interest of A. J. M.*, 277 Ga. App. 646, 647 (1) (627 SE2d 399) (2006).

*Judgments affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED MAY 12, 2006 —
RECONSIDERATIONS DENIED JUNE 16, 2006 — 

*Meron Dagnew, Bentley C. Adams III*, for appellant (case no. A06A0309).

*McCamy, Phillips, Tuggle & Fordham, Curtis A. Kleem*, for appellant (case no. A06A0310).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Bruce A. Kling*, for appellee.