637 S.E.2d 123 (2006)
In the Interest of B.D. et al., children (two cases).
Nos. A06A1632, A06A1633.
Court of Appeals of Georgia.
October 3, 2006.
*124 Rodney Q. Quarles, Chatsworth, Joshua J. Smith, Dalton, for Appellants.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Bruce A. Kling, for Appellee.
*125 RUFFIN, Chief Judge.
The juvenile court entered an order terminating the parental rights of both the father and mother of B.D., D.D., and I.D. In Case No. A06A1632, the father appeals the ruling; in Case No. A06A1633, the mother appeals. As both appeals involve the same operative facts, we have consolidated them for appeal. And for reasons that follow, we affirm.
"In reviewing a juvenile court's decision to terminate parental rights, we view the evidence in [a] light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody should be terminated."[1] So viewed, the record reveals that on January 13, 2005, the father held his three children hostage for four to five hours, and he threatened to kill both himself and I.D., his eleven-month-old son. During the hostage episode, the father held a gun to his six-year-old daughter, D.D.'s, chest. He also threatened to kill both D.D. and her younger sister, B.D., who was four years old. As a result of these actions, the father pleaded guilty to numerous crimes, including aggravated assault and making terroristic threats, and he was sentenced to ten years in prison.
All three children were taken into the custody of the Department of Family and Children Services (DFCS). In addition to the hostage crisis, the juvenile court noted that there were allegations of neglect and drug use by the parents. Following a hearing at which both the mother and father were present, both parents consented to the deprivation finding. The parents were advised that DFCS would be drafting a case plan, which would be transmitted to them sometime after the hearing.
In February 2005, DFCS submitted a case plan for approval, which the juvenile court incorporated in its order dated March 3, 2005. The case plan required the parents to, inter alia, successfully complete a psychological evaluation, obtain counseling, and undergo substance abuse assessment and treatment. Under the plan, the parents were also required to remain drug and alcohol free for six consecutive months, obtain suitable housing, and maintain a source of income. The father contends that he never received a copy of the case plan.
The mother concedes that she did not comply with most aspects of her case plan, asserting that she is, essentially, both drug-dependant and homeless. The record corroborates that the mother failed to obtain either a stable residence or long-term employment, and she continues to struggle with drug use. From January 2005 through January 2006, the mother was scheduled for 12 drug tests. The mother submitted to only nine of those tests, all of which were positive for either marijuana, methamphetamine, and/or cocaine. DFCS enrolled the mother in a drug treatment program, but the mother was ousted from the program for noncompliance. Furthermore, the mother failed to obtain a required psychological evaluation.
The father has been incarcerated since the children were taken into the custody of DFCS. First, he was imprisoned in Whitfield County, after which he was transferred first to Jackson State Prison and then to Central State Prison. Accordingly, he has been unable to comply with most aspects of the case plan, including that he obtain housing and employment. With respect to counseling services, the father testified such services were not available at Jackson State Prison and that, given the timing of his arrival at Central State Prison, he had been unable to enroll in a class, but that he planned to do so in the future.
In December 2005, DFCS petitioned to terminate the parental rights of both the mother and the father. According to the petition, termination was warranted given the father's incarceration, the mother's continued drug use, and the parents' failure to comply with the case plan.
At the March 2006 hearing on the termination petition, Brenda Payne, the current DFCS case manager, testified, and confirmed that neither parent provided proof of compliance with the case plan. Meredith Morgan, a social worker with Bethany Christian Services, *126 also testified. Morgan served as a case manager for the children while they remained in foster care. According to Morgan, when the children were initially taken into DFCS custody, they were depressed, having nightmares, and demonstrating "sexually acting out behaviors." At some point, the girls revealed that they had been sexually molested, and they were placed in counseling. After being in foster care for several months, the nightmares and sexually inappropriate behavior ceased. The current case manager, Christy Davison, testified that D.D. was excelling in school, and that the children had bonded with their foster family. Finally, Morgan testified that the children were "very" adoptable and that the agency would identify an adoptive family after the parents' rights were terminated.
Following the hearing, the juvenile court entered an order terminating the parental rights of both parents. Significantly, the court noted that the mother "failed to provide proof of completion of a single requirement of [the case] plan with the exception of visiting the children." With respect to the father, the court found it "troubling" that DFCS was unable to establish whether the case plan had been forwarded to the father. But the court nonetheless found termination warranted given that the father had been convicted "for numerous violent felonies, all involving his children," and he remained imprisoned for these crimes.

Case No. A06A1632
1. The father appeals the juvenile court's order, asserting that the court erred in terminating his parental rights "without clear and convincing evidence of parental misconduct or inability on his part." We disagree.
Termination proceedings involve a two-step inquiry.[2] First, the juvenile court must determine "whether there is clear and convincing evidence of parental misconduct or inability."[3] Such misconduct or inability exists when: (1) the child is deprived; (2) lack of proper parental care or control caused the deprivation; (3) the deprivation is likely to continue; and (4) the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child."[4] Second, the juvenile court must decide "whether termination is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home."[5]
Here, the father only challenges the fourth prong of the parental misconduct or inability test, arguing that there is no competent evidence that the children will suffer harm if he is allowed to maintain his parental rights. However, the father has been incarcerated for over a year and will, in all likelihood, remain in prison for the foreseeable future.[6] "Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present."[7] Such aggravating circumstances are clearly present in this case given that the father held his children hostage for hours and threatened to kill them.[8] And the nature of the crime perpetrated by the father supports the juvenile court's finding that the children would suffer harm if returned to their father.[9]
Moreover, we disagree with the father's argument that maintaining the status quo will not harm his children. "It is well settled that children need permanence of home and emotional stability or they are likely to suffer *127 serious emotional problems. Children cannot be kept in foster care limbo with no hope of any permanent future."[10] Thus, the juvenile court was authorized to conclude that continued deprivation will likely cause the children serious physical, mental, and emotional harm.[11]
2. In a related argument, the father contends that his parental rights were terminated without clear and convincing evidence that termination was in his children's best interests. Again, we disagree.
"`The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the child's best interest.'"[12] Here, the evidence of parental misconduct or inability  specifically the children's exposure to violence and drug use  support the finding that termination is in the children's best interests. Moreover, in assessing whether termination is in the children's best interests, the juvenile court may consider their need for a permanent, stable home environment.[13] As noted above, the father will remain incarcerated for the foreseeable future. And there is no evidence that, once he is released from prison, the father will be able to provide his children a safe, stable home.[14] Under these circumstances, we find no error in the juvenile court's decision that termination was in the children's best interests.[15]
3. Finally, the father contends that his due process rights were violated as his parental rights were terminated despite the fact that he never received a copy of the case plan. However, unless the father can establish that he was harmed by the alleged due process violation, reversal is not required.[16] Under the unique circumstances of this case, the father is unable to establish harm. The juvenile court essentially found that, in view of the egregious nature of the father's crimes  which were directed toward his children  and the father's continued incarceration, termination would be warranted even if the father had complied with the case plan. In other words, the juvenile court found that the father was unable to show that he was harmed, and we cannot gainsay this finding.[17]
Moreover, we note that the father knew his children were in DFCS custody, and he was present at the hearing after which the juvenile court advised him that a case plan would be forthcoming. Nonetheless, he took no action to contact DFCS to obtain a copy of the case plan. Thus, the father bears some responsibility for his failure to obtain the plan, and "his incarceration is no excuse for his inaction."[18]

Case No. A06A1633.
4. In a separate appeal, the mother challenges the juvenile court's decision to terminate her parental rights, arguing that the lower court should have extended the custody order rather than taking the draconian step of severing her parental rights. In support of this argument, the mother points to the fact that despite her drug addiction and homelessness, she has managed to maintain a bond with her children.
In making this argument, the mother does not contest the juvenile court's findings that: (1) the children are deprived; (2) lack of *128 proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children.[19] Moreover, the evidence clearly supports these findings. Similarly, the mother does not expressly challenge the juvenile court's conclusion that termination of her parental rights is in the children's best interests.[20] Rather, the mother's sole argument on appeal is that she should be given more time before her rights are terminated, presumably in order that she could complete her case plan. Arguably, she means to assert that the deprivation will not continue. However, it is the juvenile court, and not this Court, that determines whether the mother's conduct warrants hope of rehabilitation.[21] And the facts of this case support the juvenile court's conclusion that the children's deprivation would continue.[22] Accordingly, the juvenile court did not err in terminating the mother's parental rights.
Judgments affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] In the Interest of T.L., 279 Ga.App. 7, 10, 630 S.E.2d 154 (2006).
[2] See In the Interest of K.N.C., 264 Ga.App. 475, 481(4), 590 S.E.2d 792 (2003).
[3] (Punctuation omitted.) Id.
[4] (Punctuation omitted.) Id.
[5] (Punctuation omitted.) Id.
[6] The father testified that he hoped to be released on parole, possibly in less than five years.
[7] (Punctuation omitted.) In the Interest of T.B., 274 Ga.App. 147, 152, 616 S.E.2d 896 (2005).
[8] See In the Interest of C.S., 279 Ga.App. 831, 833(1)(a)(iii), 632 S.E.2d 665 (2006) ("domestic violence between the mother and father presents an aggravating circumstance").
[9] See id. at 834(1)(a)(iv), 632 S.E.2d 665.
[10] (Punctuation and footnote omitted.) In the Interest of C.T.M., 278 Ga.App. 297, 302(2)(a)(iv), 628 S.E.2d 713 (2006).
[11] See In the Interest of K.A.P., 277 Ga.App. 794, 797-798(1)(d), 627 S.E.2d 857 (2006).
[12] In the Interest of T.G.Y., 279 Ga.App. 449, 452(1)(b), 631 S.E.2d 467 (2006).
[13] See id. at 453, 631 S.E.2d 467.
[14] See In the Interest of C.S., supra at 834(1)(b), 632 S.E.2d 665.
[15] See id.
[16] See In the Interest of M.S., 279 Ga.App. 254, 261-262(1), 630 S.E.2d 856 (2006) (alleged due process violation of not having appointed counsel); In the Interest of J.H., 273 Ga.App. 424, 427, 615 S.E.2d 231 (2005) (alleged due process violation of not being present at termination hearing).
[17] See In the Interest of M.S., supra at 262, 630 S.E.2d 856 ("[I]n light of the overwhelming evidence supporting the termination of [the father's] parental rights, . . . we find nothing in the record that would support a finding of harm.").
[18] (Punctuation omitted.) In the Interest of S.L.H., 247 Ga.App. 594, 595, 544 S.E.2d 518 (2001).
[19] See OCGA § 15-11-94(a), (b)(4)(A)(i)-(iv).
[20] See OCGA § 15-11-94(a).
[21] See In the Interest of K.A.S., 279 Ga.App. 643, 650(1)(b), 632 S.E.2d 433 (2006).
[22] See id.