A09A0235. IN THE INTEREST OF B. M. et al., children.
(679 SE2d 113)

ADAMS, Judge.

The mother of D. M. (born 01/25/1998) and B. M. (born 02/16/2000) appeals the termination of her parental rights in the

children. For the reasons stated below, we affirm.

On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *In the Interest of S. H.*, 251 Ga. App. 555 (1) (553 SE2d 849) (2001). "We do not weigh the evidence and must defer to the trial judge as the factfinder." (Citation and punctuation omitted.) *In the Interest of C. F.*, 251 Ga. App. 708 (555 SE2d 81) (2001).

Although there is no transcript, the parties have agreed to the accuracy of hearing notes provided by the juvenile court, which have been included in the record. Those notes and the record show that the mother, P. M., had the two children by different fathers. J. M. is the father of the older child — D. M. He and P. M. were divorced on April 30, 1999, but they lived together for ten years and were married for one and one-half years. D. M. was a product of that relationship. J. M. obtained custody of D. M. about one year after the divorce. The appellant gave birth to B. M. in early 2000 by a different father.

On October 10, 2005, B. M.'s maternal grandmother filed a petition alleging that B. M. was deprived. The child had been taken into custody under a shelter care order. Following the detention hearing, the juvenile court found that the mother admitted she was addicted to methamphetamine, had recently attempted suicide, and had refused medical advice to enter treatment for the addiction. She called her mother "to come and get the child because she could not deal with him any longer due to her drug abuse." She also had attempted to run over her own sister while another child was in the car with her. Following a deprivation hearing, the court found clear and convincing evidence that the child was deprived. In addition to the above facts the mother admitted that she had driven under the influence of methamphetamine while B. M. was in the car. And, as of the date of the order — October 2005 — the mother had been unemployed for more than a year and had no income. The child was placed in his grandmother's custody for a period of two years, and the mother was ordered to comply with several typical conditions before custody could be returned. B. M.'s father's whereabouts were unknown.

J. M. has since remarried, and on March 9, 2006, he and his wife moved to intervene in the juvenile court proceedings and to gain custody of B. M. B. M.'s grandmother and the appellant consented to entry of an order granting temporary custody of the child to J. M. and his wife. On April 6, 2006, the juvenile court granted the motion and reimposed the conditions upon which P. M. could regain custody of the child and ordered that her support payments be directed to J. M.

and his wife.

On May 25, 2007, J. M. and his wife petitioned for termination of P. M.'s parental rights in both children, alleging, among other things, that P. M. had failed to comply with the previous orders and case plan and had not maintained meaningful contact with the children.[1] A guardian ad litem was appointed for the children, and counsel was appointed for the mother. Following a hearing on August 23, 2007, the juvenile court granted the petition.

In determining whether to terminate parental rights, a juvenile court applies a two-step analysis:

> First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

(Footnotes omitted.) *In the Interest of V. M. T.*, 243 Ga. App. 732, 735-736 (3) (534 SE2d 452) (2000); see OCGA § 15-11-94 (b) (4) (A).

1. *Parental Misconduct or Inability.* We find that there was clear and convincing evidence to support a finding by the juvenile court of parental misconduct or inability based upon the statutory factors.

(a) Deprivation. Following the deprivation hearing, the juvenile court found clear and convincing evidence that B. M. was deprived. Because the mother did not appeal the juvenile court's order, she is bound by that determination. *In the Interest of B. L. S.*, 239 Ga. App. 771, 774 (521 SE2d 906) (1999). Furthermore, the mother in essence admitted deprivation at the time, and the facts support that conclusion.

(b) Lack of proper parental care or control as a cause. The failure to appeal the deprivation order renders the juvenile court's determination on this second factor binding as well. *In the Interest of A. G.*, 253 Ga. App. 88, 89 (1) (b) (558 SE2d 62) (2001); *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001). Furthermore, the evidence supports the juvenile court's finding that the appellant's actions were the cause of the deprivation.

---

[1] The couple also sought termination of B. M.'s father's parental rights to that child. B. M.'s father later consented to the termination of his parental rights.

(c) The cause of the deprivation is likely to continue. "[E]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in [his or] her natural child; clear and convincing evidence of *present* unfitness is required." (Citations and punctuation omitted; emphasis in original.) *In the Interest of K. M.*, 240 Ga. App. 677, 680 (523 SE2d 640) (1999). "But the trial court is entitled to consider evidence of the [parents'] past actions in determining whether the deprivation is likely to continue. It is not bound by mere promises to do better in the future." (Citations omitted.) *In the Interest of A. M.*, 259 Ga. App. 537, 542 (578 SE2d 226) (2003).

Here, the termination hearing was held on August 23, 2007. The hearing notes show that the appellant was forced to leave a treatment program on March 12, 2007 before completion because she was arrested. She admits that she is a long-time drug addict and has sold drugs in the past, that the last time she used drugs was January 7, 2007, that she has had thoughts about suicide and of killing her son, that her stepson had sexually assaulted her son, that she has failed to obtain court-ordered psychiatric or psychological evaluation, that she has not maintained stable employment, that she has not completed court-ordered drug treatment, and that she avoided service of an arrest warrant for four months at one point in time. She admitted that she has not completed her 2005 case plan and understands she has a way to go. She is in arrears by over $11,000 on child support payments for D. M. and $1,500 for B. M. She claimed she did not know that a psychological evaluation was required in a court order but stated that she did not read the relevant order. Finally, she admitted that she had no reason to offer as to why she might not relapse in her drug use in the future.

A pediatrician testified that B. M. used to have mood swings requiring medication but that he has shown significant improvement since beginning to live with J. M. and his family. Another witness testified that the child's socialization skills had improved throughout 2008. She testified that the child is bonding well with J. M. and J. M.'s wife. J. M. and his wife testified that the child acts out and cries after the mother visits. J. M. testified that the appellant's child support payments have been erratic and that she has not maintained regular contact with the child, although he admitted cutting off contact in early 2007 when the mother was arrested and incarcerated.

The juvenile court's conclusion that the children's deprivation would be likely to continue if they were in their mother's care is supported by these facts and others mentioned in the trial court's order. Although the mother had shown some recent progress, "[j]udging the credibility of the mother's good intentions was a task for the juvenile court. [Cit.]" *In the Interest of J. V.*, 253 Ga. App. 798,

802 (560 SE2d 725) (2002).

(d) Continued deprivation is likely to cause serious harm to the child. "[I]t is not automatically true that a finding that deprivation is likely to continue will support a finding that continued deprivation will harm the child." *In the Interest of J. T. W.*, 270 Ga. App. 26, 37 (2) (d) (606 SE2d 59) (2004). But in this case the juvenile court found that the mother "has a history of chronic un-rehabilitated abuse of drugs which renders her incapable of providing adequately for the physical[,] mental, emotion[al] or moral condition and needs of the children." The record and hearing notes support this conclusion as well as the court's conclusion that "[a]lthough she is currently enrolled in treatment, she has failed to remain drug and alcohol free despite several attempts at treatment, and despite occasions of sobriety in the past. She has relapsed within this calendar year." Combined with evidence of the mother's deprivation of her children in the past as a result of her drug use, we conclude there was clear and convincing evidence that continued deprivation was likely to cause serious harm to the child.

2. *Best Interest of the Child.* The evidence presented at the hearing and discussed above supports the juvenile court's conclusion that terminating the parents' parental rights was in the best interests of the children. "The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest. [Cit.]" *In the Interest of D. L.*, 268 Ga. App. 360, 360-361 (601 SE2d 714) (2004).

> [A] finding as to whether the termination of parental rights is in the best interest of the child represents, in essence, a finding as to whether the specifics of the parental default that have *otherwise* been found to exist are of such magnitude as to warrant the conclusion that the child himself would be better served by the grant of the petition to terminate.

(Citations and punctuation omitted.) *In the Interest of B. P.*, 207 Ga. App. 242, 245 (427 SE2d 593) (1993).

The juvenile court found, among other things, that there was "a high probability that serious harm will occur . . . if the children are returned to the care of . . . the mother . . . and unless parental rights are terminated." The court concluded that termination was in the best interest of the children. A juvenile court has broad discretion when determining what is in the best interest of the children, and we will not reverse in the absence of manifest abuse of that discretion. *In the Interest of M. C.*, 243 Ga. App. 707, 712 (534 SE2d 442) (2000).

We find no abuse here.
*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MAY 22, 2009.

*Joshua J. Smith*, for appellant.
*Richard K. Murray*, for appellee.