**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 15, 2012**

# In the Court of Appeals of Georgia

A12A0272, A12A0273. IN THE INTEREST OF K. L. M. et al.,
    children.

MILLER, Judge.

Following a hearing, the juvenile court terminated the mother's parental rights with respect to her children K. L. M. and K. M. S.[1] We granted the mother's application for discretionary review, and she appeals the juvenile court's order. On appeal, the mother contends that the that the juvenile court failed to include sufficient findings of fact and conclusions of law to support its decisions, and that the evidence was insufficient to support termination of her parental rights. For the reasons that follow, we vacate the judgments below and remand these cases for entry of properly supported orders based upon the evidence in the case.

---

[1] The parental rights of the father also were terminated, but that is not an issue in this appeal.

In considering the mother's appeal, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the mother's right to custody should have been terminated. We neither weigh the evidence nor determine the credibility of any witnesses, but instead defer to the juvenile court's findings of fact.

(Citation omitted.) *In the Interest of A.B.*, 311 Ga. App. 629, 629 (716 SE2d 755) (2011).

So viewed, the evidence shows that in approximately 2002, the mother and K. L. M. and K. M. S.'s father, who was a registered sex offender, began living together in Texas. The mother gave birth to K. L. M. in January 2006 and to K. M. S. in February 2007. At some point, the father developed a romantic relationship with another woman, who moved in with the family. During the time that the mother, father, and the father's girlfriend resided together, the mother had a third child, H. H.,[2] with the father. Upon giving birth to H. H., the mother falsely listed the father's girlfriend as the "mother" on the H. H.'s birth certificate due to the girlfriend's threats of physical violence.

Based upon reports of domestic violence in the residence, the state of Texas initiated proceedings in 2009 to remove the mother's children from her custody. To

---

[2] H. H. was not included in the deprivation petition.

2

avoid the Texas authorities, the mother fled Texas and moved to Georgia in March 2009. Upon arriving in Georgia, the mother, K. L. M., and K. M. S. began residing with the mother's sister. The mother's third child, H. H., was left in the custody of the girlfriend.

Shortly thereafter, the Berrien County Department of Family and Children Services (the "Department") launched an investigation upon receiving a report that the mother fled Texas. Due to sanitation issues, medical neglect, and inadequate housing and clothing, the children were taken into the Department's care. The juvenile court subsequently found the children to be deprived and placed legal custody of the children in the Department.[3]

The juvenile court issued reunification plans that required the mother to, among other things, secure suitable housing with the assistance of the Department, maintain employment, and end her relationship with the father due to his status as a registered sex offender. The Department found the mother a suitable home and requested that she pay the deposit for utilities since she had steady employment. The mother refused to pay the deposit, claiming that she could not afford it. The Department discovered,

_____

[3] These deprivation orders were not appealed.

however, that the mother had been sending money to the father during this time. The mother continued to reside with her sister and her family, sleeping in the living room.

Although the mother denied having contact with the father, the Department presented evidence that the mother maintained a relationship with him in contravention of the reunification plan. A licensed professional counselor attempted to explain to the mother that the father had manipulated her, but the mother defended him and insisted that their relationship was not abusive. Given these circumstances, the Department initiated a non-reunification plan and filed a petition to terminate the mother's parental rights.

At the hearing on the petition to terminate parental rights, the mother admitted that she had not attempted to obtain custody of H. H. from the father's girlfriend. The Department reported that the mother's living situation with her sister – where the children had lived prior to their removal to foster care – was not suitable for the children because the house was too small for the number of people living in it, and because it had a "really bad odor" emanating from outside the house. It was also revealed that the mother had not paid child support since the children were removed.[4]

---

[4] While the mother was never ordered to pay child support, she had a statutory duty to support her children in foster care even absent a court order. See *In the Interest of R. W.*, 248 Ga. App. 522, 525 (2) (546 SE2d 882) (2001); *In the Interest of*

The Department opined that the children would be deprived if returned to the mother. When the juvenile court asked the mother to explain why it should believe that she had in fact ended her relationship with the father, the mother merely responded, "You know what, I don't know."

The Department also presented evidence that, although both children had very significant needs, the children's health and well-being had improved dramatically since the children were placed in foster care. Both the guardian ad litem and the court-appointed special advocate ("CASA") recommended that the juvenile court terminate the parental rights of the mother. The guardian ad litem cited the mother's refusal to end her relationship with the father and her failure to obtain adequate housing. The CASA stated that the children needed permanency and routine.

In its orders terminating the mother's parental rights, the juvenile court took judicial notice of its earlier orders and proceedings. The juvenile court found that clear and convincing evidence demonstrated that the children were deprived; that the cause of the deprivation was lack of proper parental care or control; that the

_P.D.W._, supra, 296 Ga. App. at 194 (1) (b) ("Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income.") (citation and punctuation omitted).

deprivation was likely to continue and was likely to cause serious physical, mental, emotional, and moral harm to the children; and that the termination of the mother's parental rights was in the children's best interest. In support of its determination, the juvenile court specifically found that the mother continued to maintain contact with the father, whom she knew to be a registered sex offender; that the mother sent money to the father; that she had not attempted to obtain custody of H. H.; that the mother was unable to manage a home with children and had not reached a point to be a parent; and that the guardian ad litem and the CASA had recommended termination of the mother's parental rights.

The mother contends that the juvenile court's termination order failed to set forth sufficient findings of fact to support its ultimate conclusion, and that the evidence was insufficient to support termination of her parental rights.

> A juvenile court's termination of parental rights is two-step process. The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parent care or control caused by the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Citations and punctuation omitted.) *In the Interest of S.W.J.P.D.*, 275 Ga. App. 272, 272-273 (620 SE2d 497) (2005); see also OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv).

(a) *Deprivation.* The mother contends that, while she is bound by prior unappealed orders finding the children deprived, the juvenile court erred by failing to make a determination of whether the children were deprived at the time of the termination order.

> [T]his Court has repeatedly held that unappealed deprivation orders bind the parents insofar as they establish that the existence of certain conditions (at the times those orders were entered) constituted a clear and convincing showing that the child was deprived as defined under the law; but only upon a further showing by the [D]epartment that the conditions upon which this finding was based still exist at the time of the hearing on the termination petition will this criterion be met.

(Citations and punctuation omitted.) *In the Interest of P. D. W.*, 296 Ga. App. 189, 192-193 (1) (a) (674 SE2d 338) (2009).

Here, the juvenile court based its earlier findings of deprivation upon evidence that the father, a registered sex offender, was living near the mother, the mother was a flight-risk, and the children were living in an unsanitary and unhealthy environment. The evidence shows that these conditions had not changed at the time of the termination hearing. Significantly, the mother continued to reside in the same unsanitary house that the Department found unsuitable for the children. Additionally,

7

despite her denials to the contrary, there was evidence that the mother continued to have a relationship with the father. Since the evidence showed that the conditions upon which the juvenile court's deprivation findings were based still existed at the time of the termination hearing, and because the mother did not appeal the initial deprivation orders, the mother was bound by these findings and may not challenge the juvenile court's finding of deprivation. See, e.g., *In the Interest of K.C.W.*, 297 Ga. App. 714, 718 (2) (a) (678 SE2d 343) (2009); *In the Interest of R.N.H.*, 286 Ga. App. 737, 740 (1) (a) (650 SE2d 397) (2007). Moreover, the mother's failure to obtain suitable housing or cease her relationship with the father, as required by the case plan, and her failure to pay child support authorized a finding the children were deprived. Cf. *In the Interest of J.D.*, 280 Ga. App. 861, 863 (1) (a) (635 SE2d 226) (2006) (mother's failure to make significant progress towards compliance with reunification plan supported finding that children were deprived).

(b) *Lack of parental care or control as the cause of the deprivation*. The mother did not appeal the juvenile court's prior orders finding that the children were deprived due to a lack of proper parental care and control. Thus, she is bound by those findings. See *In the Interest of B.M.*, 298 Ga. App. 100, 102 (1) (b) (679 SE2d 113) (2009) ("The failure to appeal the deprivation order renders the juvenile court's

8

determination on this second factor binding[.]") (citations and punctuation omitted); *In the Interest of M.C.*, 287 Ga. App. 766, 768 (1) (b) (653 SE2d 120) (2007) (same).

In any event, the evidence presented supports the juvenile court's finding that the deprivation was caused by a lack of proper parental care. See *In Interest of P.D.W.*, supra, 296 Ga. App. at 193 (1) (b) (where the children are in the Department's custody, the relevant inquiry is whether the children would return to a state of deprivation if returned to the parent due to the parent's lack of proper parental care or control). The evidence showing that the mother failed to sever contact with the father, that she defended the father and insisted her relationship with him was not abusive despite evidence to the contrary, and that she diverted resources to the father instead of paying child support or securing housing supported a finding that the children would return to a state of deprivation because of the mother's lack of proper parental care or control. See *In the Interest of P.D.W.*, supra, 296 Ga. App. at 194 (1) (b) (mother's failure to obtain suitable housing, complete counseling, or pay child support supported finding that the mother lacked parental care that the was cause of children's deprivation); *In the Interest of C.H.*, 305 Ga. App. 549, 560 (2) (b) (700 SE2d 203) (2010) (evidence of mother's refusal to cease contact with abusive partner and failure to pay child support showed her inability to provide a suitable, safe house

9

for her children and supported juvenile court's finding that lack of parental care or control caused the deprivation).

(c) *Cause of deprivation was likely to continue.* The above evidence also shows that the deprivation was likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Citation and punctuation omitted.) *In the Interest of M.M.*, 276 Ga. App. 211, 215 (622 SE2d 892) (2005). Although the mother received counseling for the domestic violence, she failed to comply with the reunification plan by continuing to maintain contact with the father, a registered sex offender. Although the mother stated that she had ended her relationship with the father, she could not explain why the juvenile court should believe her. This evidence, coupled with the evidence of past deprivation, authorized the juvenile court's finding that the deprivation of K. L. M. and K. M. S. would likely continue should the children be returned to the mother's custody.[5] Cf. *In the Interest of N.L.*, 260 Ga. App.

---

[5] To the extent the mother argues that the juvenile court relied upon hearsay evidence to conclude that the deprivation would continue, her claim is without merit. Here, the foster mother testified that K. L. M. had described being sexually abused by her father and others. While the foster mother's testimony was inadmissible because there is no evidence showing that K. L. M. was available to testify at the

10

830, 834-835 (581 SE2d 643) (2003) (evidence that the mother continued to have a relationship with the abusive individual, failed to secure a home, and had taken no serious steps to secure one provided sufficient evidence that the mother would not change her course of behavior).

(d) *Likelihood of harm.* The juvenile court's next consideration is "whether the child would be harmed if returned to the parent's care and control, associated environment, and state of deprivation." (Punctuation omitted.) *In the Interest of P.D.W.*, supra, 296 Ga. App. at 195 (1) (d).

> When a court assesses whether a child now in foster care is likely to suffer serious harm as a result of continued deprivation, . . . the court must consider not only the likelihood of harm if the child remains indefinitely in foster care, but also the likelihood of harm if the child returns to the custody of his parent, notwithstanding that the deprivation continues.

(Citations, punctuation, and footnote omitted.) *In the Interest of C.L.*, __ Ga. App. __,

* 4 (1) (b) (Case No. A11A2423, decided March 30, 2012). However,

---

evidentiary hearing, see *In the Interest of A. T.*, 309 Ga. App. 822, 825-826 (1) (711 SE2d 382) (2011) (concluding that under Child Hearsay Statute, OCGA § 24-3-16, reports of sexual abuse by a child under the age of 14 years is admissible in evidence by the testimony of the person to whom the report was made if the child was "available to physically appear" at the hearing), the juvenile court's order did not discuss the foster mother's testimony about K. L. M.'s reports of sexual abuse, and there is no evidence showing that juvenile court otherwise relied upon these hearsay statements.

11

an order terminating parental rights must contain explicit findings supporting the conclusions that by reason of the deprivation the child is suffering from or will probably suffer serious physical, mental, moral, or emotional harm. A dry recitation that certain legal requirements have been met is insufficient to satisfy the requirements of the law. The trial judge is to ascertain the facts and to state not only the end result of that inquiry but the process by which it was reached.

(Citations and punctuation omitted.) *In the Interest of K.J.*, 226 Ga. App. 303, 307 (2) (b) (486 SE2d 899) (1997); see also *In the Interest of D.T.A.*, 312 Ga. App. 26, 33 (1) (d) (717 SE2d 536) (2011).

Here, in summary statements, the juvenile court found that the "continued deprivation of the child[ren] is likely to cause serious physical, mental, emotional, or moral harm to the child[ren]." The orders did not state any specific facts that led the juvenile court to conclude that there was a likelihood of serious harm from continued deprivation. Cf. *In the Interest of D.T.A.*, supra, 312 Ga. App. at 33 (1) (d). Significantly, although the juvenile court made findings as to the mother's unfitness and conduct, it made no findings as to the children's relationship with the mother, their status in foster care, their need for permanency, or the likelihood that the children would be harmed if returned to their mother. "Without more specific factual findings on the issue of the likelihood of serious harm from continued deprivation, we have no basis to evaluate whether the juvenile court properly determined that clear

12

and convincing evidence supported the court's conclusion on that issue." (Citations and punctuation omitted.) Id. at 33 (1) (d) (general findings of mother's unfitness and conduct did not automatically support a finding that continued deprivation will harm the children); see also *Interest of K.J.*, supra, 226 Ga. App. at 307-308 (2) (b), n.1 (although father's failure to meet reunification case plan, his failure to provide a stable residence, and his incarceration supported finding of deprivation, the juvenile court did not specify any facts to support its summary statement concerning the likelihood of serious harm to the child). Accordingly, we vacate the judgment of the juvenile court and remand the case for the juvenile court to make appropriate findings of fact and conclusions of law addressing this issue. See *In the Interest of D.T.A.*, supra, 312 Ga. App. at 33-34 (1) (d) (remanding for the juvenile court to make specific factual findings to support its conclusion that continued deprivation of the children was likely to cause serious harm).

*Judgment vacated and case remanded with direction. Mikell, P. J., and Blackwell, J., concur.*