**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 8, 2021**

# In the Court of Appeals of Georgia

A20A2124. IN THE INTEREST OF T. R. et al. children.

GOBEIL, Judge.

Following the grant of her application for this Court's discretionary review, the mother of three minor children, T. R. (1/9/07), J. R. (4/15/11), and R. R. (12/4/13), appeals from the juvenile court's order terminating her parental rights. On appeal, she contends that the court erred in finding that there was clear and convincing evidence that (1) the reason for the children's dependency was likely to continue or would not be remedied; (2) continued dependency would cause serious harm to J. R. and R. R.;[1] (3) termination of parental rights was in the best interest of J. R. and R. R.; and (4) the Department of Family and Children Services ("DFCS") made reasonable efforts

---

[1] The mother challenged portions of the trial court's order with respect to J. R. and R. R., but not with respect to her eldest child, T. R.

to reunify the family, eliminate the causes of dependency, and finalize the permanency plan. Additionally, the mother argues that the trial court erred by dating its termination order nunc pro tunc to a date prior to the date of the termination hearing. Because the evidence was sufficient as to some factors, but the juvenile court failed to make the requisite findings of fact as to others, we vacate and remand for additional proceedings consistent with this opinion.

This Court reviews an appeal from an order terminating parental rights in the light most favorable to the juvenile court's judgment to determine

> whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We neither weigh evidence nor determine witness credibility, but defer to the juvenile court's findings of fact and affirm unless the appellate standard is not met.

*In the Interest of U. G.*, 291 Ga. App. 404, 404 (662 SE2d 190) (2008) (citation and punctuation omitted). We are ever mindful in our review that "there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously." *In the Interest of E. G. L. B*., 342 Ga. App. 839, 840 (805 SE2d 285) (2017) (citation and punctuation omitted).

So viewed, the record demonstrates that the children were removed from the mother's home in July 2016, after DFCS investigated a report that the mother used cocaine and was using her monthly SSI benefits to support her drug habit. The mother tested positive for cocaine, and DFCS filed a petition for dependency on July 19, 2016. In the petition, DFCS alleged that after the mother's drug screen, she was asked if there were family members with whom the children could reside, and in response, she violently threw a coffee mug near the case manager and service provider. DFCS confirmed that the mother was bipolar and learned that she was receiving services from the Oconee Center.[2] According to the removal order, DFCS searched for relatives at that time but could not locate a suitable home for the children, and the juvenile court ultimately placed the children in DFCS custody. At that time, the mother stipulated to probable cause for removal.

The mother submitted to a parenting assessment on August 16, 2016, and the assessor recommended that she abstain from her use of cocaine and other mood

---

[2] The precise nature of the services the mother received from the Oconee Center is unclear. In a letter, an Oconee Center employee noted that the mother attended unspecified "group therapy"; a case plan progress report indicated that she attended "outpatient substance groups"; and, in her family assessment, the mother reported that she attended group therapy at the Oconee Center for "sexual abuse and substance abuse treatment."

3

altering substances, continue to attend group sessions at the Oconee Center, provide a stable, secure, drug-free home, participate in supervised visitation, attend parenting classes, and provide a minimum of six months of negative drug screens. The assessor concluded that the mother needed support from DFCS to ensure she followed through on the recommendations. Notably, the assessor recommended a psychological evaluation "to determine if [the mother] has serious mental health problems or just a lack of motivation to get her children back."

After a disposition hearing on August 25, 2016, at which the mother stipulated to dependency based on her substance abuse, DFCS and the mother agreed to a reunification case plan, which included substance abuse and parenting assessments, compliance with recommendations from the assessments, and nine months of drug free testing twice weekly. The actual case plan was established on September 19, 2016. It required that the mother remain drug and alcohol free for six months and that she maintain a source of income for the children and suitable housing, among other things.

At a judicial review hearing on September 22, 2016, the mother was found to be in compliance with her case plan goals. Further, she submitted to the psychological evaluation on October 6, 2016, which prompted the psychologist to recommend that

4

she see a psychiatrist for medication, take one-on-one parenting classes, and submit to individual counseling. Noting the mother's history of depression and mood disorders, the psychologist concluded that given the mother's level of cognitive ability, poor insight, and life circumstances, she likely would be unable to provide the secure, stable, and healthy environment that her children needed without significant social support. Specifically, long term case management in the form of unannounced visits and ongoing assessments would be warranted if reunification were achieved.

The mother tested positive for cocaine in December 2016 and January 2017. At a periodic review hearing on February 9, 2017, the court determined that the mother was not making appropriate progress on her case plans and changed her case plan to reunification concurrent with adoption. At a permanency hearing on April 13, 2017, the court relieved DFCS of its obligation to transport the mother to the supervised visitation.

In November 2017, DFCS filed a petition seeking to terminate the mother's parental rights. In the petition, DFCS alleged that the mother's medically verified mental and emotional health deficiency rendered her unable to provide adequately for her children, that she tested in the "very low" range of cognitive ability, and that she was unlikely to be able to provide adequate care without significant support given her

issues. The petition also alleged that she threatened to kill a case manager and a service provider; she had a history of chronic unrehabilitated substance abuse issues; she physically, mentally, and emotionally neglected her children while using cocaine; and she failed to maintain a parental bond with the children and comply with her case plan. Therefore, DFCS represented that the children's best interest warranted the termination of the mother's rights.

At the termination hearing, held in June 2018, the mother testified that she moved from Sparta to Macon in 2017 to get away from "negative stuff." Since the move, she had failed to enroll in services or complete case plan recommendations. She confirmed that she did not have a driver's license or transportation to get to substance abuse treatment or money to pay for drug screens, and that she requested that DFCS send service providers to her home. She admitted that she had failed to complete her case plan. Specifically, the mother had failed to attend mental health appointments. The mother denied being diagnosed as bipolar, despite having self-reported this diagnosis to the psychologist. T. R., the mother's eldest child, receives $490 per month in SSI disability benefits, but the mother admitted that she had never taken T. R. to the doctor.

6

A DFCS representative provided testimony that DFCS was required to provide transportation to visitation, but not to other services, such as parenting classes. Thus, it was the mother's responsibility to arrange transportation to her appointments to fulfill her case plan. The representative further testified that the mother had not reached out to arrange services and her bipolar disorder remained untreated. T. R. testified that she did not wish to have contact with her mother, but the younger two children, J. R. and R. R., expressed a desire to continue to visit with her. The foster father testified that all three children demonstrated behavioral issues after visits with the mother.

The juvenile court noted that it had "some problems with this case," but ultimately terminated the mother's parental rights to all three children, concluding that the verifiable deficiency in the mother's mental and emotional health rendered her unable to provide adequately for her children, that she failed to comply with the case plan, that she moved away from the children of her own free will, that she failed to follow the recommendations of the parenting assessment, and that the cause of dependency would continue due to her unaddressed mental health issues.

The mother filed a motion for new trial, in which she asserted that the judgment was contrary to law and against the weight of the evidence. The juvenile court entered

a temporary order reserving its ruling, pending the preparation of the trial transcript. The mother later consented to the denial of her motion for new trial to expedite the appeal process. She then filed an application for discretionary review, which we granted. The instant appeal followed.

The juvenile code calls for a two-pronged analysis in a termination of parental rights case. OCGA § 15-11-310. First, the juvenile court determines whether one of five statutory grounds for termination has been met, including the primary ground on which the court relied in this case :

> A child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not required, such cause of dependency is likely to continue or will not likely be remedied in the foreseeable future, and:
>
> (A) Returning such child to his or her parent is likely to cause serious physical, mental, moral, or emotional harm to such child or threaten the physical safety or well-being of such child; or
>
> (B) Continuation of the parent and child relationship will cause or is likely to cause serious physical, mental, moral, or emotional harm to such child.

8

OCGA § 15-11-310 (a) (5). In determining whether a child is without proper parental care and control, courts shall consider a parent's medically verified mental health deficiency. OCGA § 15-11-311 (a) (1). Second, if one or more statutory grounds have been met, the juvenile court then considers whether termination is in each child's best interest by considering the following factors:

(1) Such child's sense of attachments, including his or her sense of security and familiarity, and the continuity of affection for such child;

(2) Such child's wishes and long-term goals;

(3) Such child's need for permanence, including his or her need for stability and continuity of relationships with a parent, siblings, and other relatives;

(4) Any benefit to such child of being integrated into a stable and permanent home and the likely effect of delaying such integration into such stable and permanent home environment;

(5) The detrimental impact of the lack of a stable and permanent home environment on such child's safety, well-being, or physical, mental, or emotional health;

(6) Such child's future physical, mental, moral, or emotional well-being; and

9

(7) Any other factors, including the factors set forth in Code Section 15-11-26, considered by the court to be relevant and proper to its determination.

OCGA § 15-11-310 (b). In reviewing a jevenile court's determination of these issues, this Court neither weighs evidence nor determines the credibility of witnesses. *In the Interest of D. L. T. C.*, 299 Ga. App. 765, 765 (684 SE2d 29) (2009).

1. The mother first argues that the juvenile court erred in concluding that the reason for the children's dependency was likely to continue or would not be remedied. She points out that the juvenile court based its ruling on her medically verifiable deficiency, but that other than showing that she had a mental health diagnosis and episodes of behavioral instability, DFCS failed to show that it was the mother's mental health diagnosis rather than her drug use that caused the children's dependency.

In its deprivation order, the juvenile court noted the mother's bipolar diagnosis. Because the mother did not appeal from the court's prior determinations that the children were dependent, these findings are conclusive and thus sufficient to show that the children were deprived due to the mother's lack of proper parental care or control. *In the Interest of S. R. R.*, 330 Ga. App. 817, 820 (769 SE2d 817) (2015).

10

Here, the juvenile court's termination order shows that the medical deficiency was only one of the reasons supporting the mother's parental instability.

As found by the trial court, the mother failed to comply with the court-ordered case plan, which included addressing her mental health issues. The court noted that she "moved from Hancock County to Bibb County on her own free will," and this move precipitated her failing to keep appointments and progress on her case plan. Additionally, the court found that she had not followed the recommendations of the parenting assessment and that the cause of dependency would likely continue due to her unaddressed mental health issues. These findings were clearly supported by the recommendations from the psychological evaluation.

A parent's past conduct properly is considered when the court determines whether the conditions of dependency are likely to continue, and the juvenile court therefore was authorized to evaluate the mother's past behavior in deciding this case. *In the Interest of T. A.*, 331 Ga. App. 92, 96 (3) (c) (769 SE2d 797) (2015). See also *In the Interest of C. H.*, 305 Ga. App. 549, 561 (2) (c) (700 SE2d 203) (2010) (a "parent['s] conduct over the years was a better predictor of [her] future conduct than a few months of partial stability") (citation and punctuation omitted). As previously stated, the mother was shown to have difficulty developing parenting skills and was

11

not likely to improve without significant support, as set forth in the parenting assessment and psychological evaluation. Furthermore, the court found that the mother's inability to meet her case plan goals and her failure to address her mental illness both caused her to neglect her children. Given these circumstances, we cannot say that the juvenile court erred in finding that the children's dependency was likely to continue and not be remedied. See *In the Interest of S. P.*, 336 Ga. App. 488, 498 (2) (b) (784 SE2d 846) (2016) (physical precedent only) (mother's failure to complete case plan because of her inability or unwillingness to address her psychological issues supported juvenile court's findings as to dependency); *In the Interest of C. J. V.*, 333 Ga. App. 844, 847 (1) (777 SE2d 692) (2015) (results of her psychological evaluation established mother incapable of providing basic needs of child).

2. Next, the mother argues that the juvenile court erred in finding by clear and convincing evidence that continued dependency would cause serious harm to the two youngest children. J. R. and R. R. The mother points out that Georgia law requires explicit findings to support this conclusion, relying on the rule that "a mere recitation that this legal requirement was met will not suffice." *In Interest of A. B.*, 346 Ga. App. 2, 10 (1) (d) (815 SE2d 561) (2018) (citation and punctuation omitted).

We have long said that a finding that dependency is likely to continue does not necessarily justify a finding of harm, although dependency could support a finding of harm in particular circumstances. Rather, in determining whether harm to the child exists, our law requires a juvenile court to consider both the relationship between the parent and child at the time of the termination hearing and what might happen if the child were returned to the parent. Thus, the court must assess whether a child currently in foster care is likely to suffer serious harm as a result of continued dependency if the child remains indefinitely in foster care, and also the likelihood of harm if the child returns to the custody of his parent, notwithstanding that the deprivation persists.

*In the Interest of L. P.*, 339 Ga. App. 651, 656-657 (2) (794 SE2d 252) (2016) (citations and punctuation omitted). Here, however, the termination order contains little consideration of the relationship between the mother and the children at all. Rather, in assessing the potential harm to the children, the court states: "it would be both harmful to return the children to the mother and . . . there is evidence that the children exhibit aggressive behaviors after contact with the mother which would result in both emotional and educational harm to the children."

"The trial judge is to ascertain the facts and to state not only the end result of that inquiry but the process by which it was reached." *In the Interest of D. T. A.*, 312 Ga. App. 26, 33 (1) (d) (717 SE2d 536) (2011) (citation and punctuation omitted).

13

This did not occur here.[3] "[A]lthough the juvenile court made findings as to the mother's unfitness and conduct, it made no findings as to the children's relationship with the mother, their status in foster care, their need for permanency, or the likelihood that the children would be harmed if returned to their mother." *In the Interest of K. L. M.*, 316 Ga. App. 246, 252-253 (d) (729 SE2d 452) (2012). Accordingly, we vacate the order and remand the case for the juvenile court to make appropriate findings of fact. See *Interest of D. M.*, 339 Ga. App. 46, 55-56 (2) (a)

---

[3] Notably, the juvenile court's oral findings contain more detail than its written order. Specifically, the court found that the mother's failure to attend visitation and "comply with the court-ordered case plan designed to reunite her with her children" demonstrated a weak parental bond. As to harm, the court was troubled that the children were in their twenty-second month of foster care and the mother still had failed to address her mental health issues, remarking that young children are particularly susceptible to harm from broken promises. However, these "oral findings in the transcript are not sufficient to satisfy the requirement for express, written findings of fact and conclusions of law." *Maynard v. Brown*, 276 Ga. App. 229, 331 n. 2 (622 SE2d 901) (2005) (in proceeding for adoption and termination of parental rights, concluding that oral findings were insufficient and vacating judgment and remanding case to trial court with directions to enter new decree with specific findings and conclusions).

Furthermore, neither these oral findings nor the court's written findings specify what harm might result to the children if they are returned to the mother. Instead, the instances of harm pertain to the children's relationship to the mother in the context of foster care and visitation (e.g., aggressive behavior at school following visitation, the mother promising to buy the children food during visitation but being unable to afford to do so; and the mother's "broken promises" to the children that they will be returned to her custody).

(793 SE2d 422) (2016) (vacating and remanding for the juvenile court to make appropriate and explicit findings of fact and conclusions of law, where its termination order did not provide any specific findings of fact regarding the likelihood of serious harm from the continued dependency, but merely cited to generalized concerns of doubt, uncertainty, hesitancy in life, and the need for stability and permanence).

We further note that the mother did not argue on appeal that the juvenile court erred in finding by clear and convincing evidence that continued dependency would cause serious harm to her eldest child, T. R. However, based on the particular circumstances of this case, upon remand, the juvenile court's order should include specific findings as to each child.

> In a termination proceeding, each child in these circumstances deserves and requires a full, separate, and thoughtful review by the juvenile court of the issues relating to the child, and this cannot and will not happen if the child is treated as if she were merely part of some detached hypothetical inquiry—rather than as what she actually is, a human being with inherent dignity and worth. Without specific factual findings as to [the children individually] on the question of the likelihood of serious harm from continued deprivation, we have no basis to evaluate whether the juvenile court properly determined that clear and convincing evidence supported the court's conclusion on that issue.

15

*Interest of D. M.*, 339 Ga. App. at 55-56 (2) (a) (citation, punctuation, and emphasis omitted).

At the hearing on the termination petition, T. R. testified that she had been in foster care since she was a baby. She further testified that she did not want to visit with her mother, and, when asked if she had anything she would like the court to know, she replied: "Don't let [the mother] get me back." In contrast, J. R. and R. R. both indicated that they liked to visit with their mother and want to see her. Similarly, the GAL testified that "there is a bond between [the mother] and [J.R.] and [R. R.], but there is no bond between [the mother] and [T. R.]." When describing the relationship between the mother and T. R., the GAL stated, "they could pass each other and it's like she could care less – [T. R.] could care less about seeing her mom, talking to her mom." In light of this testimony, upon remand, the trial court should make separate findings as to each child.

3. The mother also argues that the juvenile court erred in finding that termination was in the children's best interest. In its written order, the court concluded summarily that termination would be in the children's best interest.[4] For

---

4

Again, the court's oral findings included greater detail than its written order. At the hearing, the court noted that the children display an attachment to their foster parents,

16

the reasons set forth in Division 2, this issue will need to be addressed more specifically by the trial court upon remand. *Interest of D. M.*, 339 Ga. App. at 56-57 (2) (b).

4. The mother next argues that the trial court erred in finding that DFCS made reasonable efforts to eliminate the causes of dependency and finalize the permanency plan, which was a violation of the mother's rights under Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 USC § 12101 et seq. Our review of the record demonstrates that this argument was not raised below.[5]

> Issues 'presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not

---

and permanency is important to the children's best interest. After finding that T. R. did not want to live with the mother, the court went on to find that the children should not be separated.

[5] The only mention of the ADA in the record is the mother's counsel's question to the Hancock County Director, who supervises case managers, to wit: "Is [DFCS] not required to accommodate . . . the fact that [the mother], obviously, lacks certain capabilities of getting to these places to make use of these services herself? . . . Meaning the [ADA], required to accommodate people with disabilities by providing those services?" The county director responded: "No, we do not provide transportation to services. We provide transportation to visitation." The mother's counsel responded: "Okay," and the issue was not mentioned again.

17

abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.'

*Foreland v. State*, 223 Ga. App. 326, 327 (2) (477 SE2d 633) (1996); see *In the Interest of J. P. V.*, 261 Ga. App. 194, 197 (3) (582 SE2d 170) (2003). Because the mother failed to sufficiently raise this issue below, she did not preserve this claim for review on appeal.

5. Lastly, the mother argues that the court erred by dating its termination order nunc pro tunc to a date prior to the date of the termination hearing. Based on our decision to vacate the judgment and remand this case, this issue is moot.

*Judgment vacated and case remanded with direction. Barnes, P. J., and Pipkin, J., concur*.